JOHN LINDT, Appellee, v. AUGUST UIHLEIN AND THE SCHLITZ BREWING COMPANY, Appellants.

Color of Title: RECOVERY FOR IMPROVEMENTS: *Deed given in payment for liquor.* A deed given in payment for liquors intended to be sold in violation of law, and void under Code 1873, section 1550, which provides that all conveyances made in whole or in part for or on account of the sale of intoxicating liquors sold in violation of the chapter of which the section is a part shall be void, is so far in violation of equity and good conscience as not to constitute color of title which will entitle the grantee, as against the grantor, to the value of improvements placed on the property by the former while in possession under the deed.

SAME: *Recovery of taxes paid.* The grantee by going into possession of the property and paying taxes and making improvements does not acquire a color of title which will entitle him to compensation as an occupying claimant for the improvements, as the possession and other acts cannot be said to be in good faith; the grantee being presumed to know that the deed under which he was claiming was invalid.

EQUITY: *Conduct of grantor no defense.* Where a deed to real estate on which the grantee, after going into possession, erects valuable improvements, is within Code 1873, section 1550, avoiding conveyances given in consideration of liquor to be sold in violation of law, and the grantee is not entitled to the value of the improvements as an occupying claimant, the claim of the grantor or his successor to the improvements will not be denied as unjust or unequitable, even though the conduct of the grantor was as culpable as was that of the grantee, as such consideration are for the legislature, and not for the courts.

Occupying Claimants: TIMELY FILING OF PETITION FOR IMPROVEMENTS: *Loss of lien.* A claimant of land who is ousted from possession thereof on an adverse determination of his claim,

loses his right to petition for the value of improvements under the occupying claimant's act (Code, title 14, chapter 7) by failing to petition therefor before surrendering possession of the property, as such right is in the nature of a lien, which is lost by a surrender or loss of possession.

**Presumptions on Appeal:**   *Procedure under occupying claimant law.*   Where the record on appeal does not show · that the claimant attempted to file his petition under the occupying claimant's act (Code, title 14, chapter 7) before he was dispossessed, it will be presumed that a petition therefor was not filed, or an application made for stay of execution till a petition could be filed before the claimant could be disposessed, as, the the trial court having power to withhold execution for a reasonable time to enable the claimant to file such petition, it is presumed that it would have done so if proper application had been made therefor.

*Appeal from Pottawattamie District Court.*—HON. WALTER I. SMITH, Judge.

WEDNESDAY, FEBRUARY 12, 1902.

THE district court having sustained a demurrer to their petition filed under the occupying claimant's act, the defendants appeal.—*Affirmed.*

*Edson Rich* and *Harl & McCabe* for appellants.

*Mynster & Lindt* for appellee.

WEAVER, J.—On June 26, 1894, Anna Pralor, being the owner of a certain building and lot in the city of Council Bluffs, made a deed of the same to the defendant Uihlein, as trustee for his codefendant, the Schlitz Brewing Company.   In part consideration of said conveyance Mrs. Pralor agreed to receive, a large quantity of beer, to be sold in violation of law.   After the conveyance, and in pursuance of the contract under which the same was made, the brewing company leased the premises

to Mrs. Pralor for the unlawful sale of beer of said company's manufacture. This tenancy was terminated in June, 1895, by the loss of the building by fire; and thereafter, with the knowledge of Mrs. Pralor, and without objection on her part, defendants expended several thousand dollars in the erection of a new building in place of the one destroyed. On September 12, 1896, Mrs. Pralor began an action in equity against the defendants (being the main action in which the petition now under consideration was afterward filed), alleging herself to be the absolute owner of the property, and asking that the title thereto be quieted in her. This claim of title, as against the defendants, was based upon the theory that the sale and conveyance made by her as aforesaid were absolutely void under the provisions of the statute then in force (Code 1873, section 1550). The defendants contested the claim thus asserted, and asked that, if Mrs. Pralor was found entitled to the relief sought, she should be held to pay for the improvements they had put upon the premises, and that the cost or value thereof be made a lien upon the property. On August, 16, 1897, the district court, after a trial of the case upon its merits, rendered a decree in Mrs. Pralor's favor, and on the following day the defendants perfected an appeal to this court. About this time, John Lindt, having obtained a conveyance of Mrs. Pralor's interest in the property, was substituted as plaintiff. No supersedeas bond was filed upon said appeal, and soon thereafter plaintiff caused an execution for the possession of the property to be issued upon the decree, and ousted the tenants, who were occupying the property under lease from the brewing company. Immediately after being thus dispossessed, the tenants re-entered the premises, and obtained temporary injunction against further attempt by the plaintiff to eject them. Later the injunction was dissolved, and the tenants were once more expelled by resort to forcible entry and detainer proceedings before a local magistrate, from which judgment they appealed to the district court, where the cause is still pending. At the May,

1899, term of this court, the decree of the district court in the principal cause, quieting the title to the property in plaintiff, was affirmed, and at the October, 1899, term, defendants' petition for rehearing was overruled, and that branch of the litigation brought to an end. *Lindt v. Uihlein,* 109 Iowa, 593. On November 15th defendants filed their petition in the original cause in the district court, asserting a claim under Code, title 14, chapter 7, commonly called the "Occupying Claimant's Act," to recover the value of the improvements placed by them upon the property. The petition alleges that the defendants made the improvements with the knowledge of Mrs. Pralor, and without objection on her part; that in so doing they were acting in good faith, and under sufficient color of title, as defined by the statute. To this petition plaintiff demurred on the ground (1) that at the time of filing the petition defendants were not, and are not now, in possession of the premises; (2) that the payment of taxes as alleged by defendants is not sufficient to constitute color of title; (3) that the acts of defendants on which they base their claim appear to have been done under a deed which was null and void; (4) that, having gone into possession under a deed which the statute declares void, they cannot claim to have held in good faith; and (5) that the improvements appear to have been made by defendants for the express purpose of using the same in violation of the laws of the state, and were therefore not made in good faith. The demurrer was sustained, and the correctness of that ruling is now presented for our consideration.

I. We first inquire whether defendants were in possession of the property under color of title. By the term "color of title" is meant that which appears to be title, but which in reality is no title. *Wright v. Mattison,* 18 How. 356, (15 L. Ed. 280). It involves, also, the idea of some deed of conveyance or some paper or document upon which the holder may reasonably rely as vesting in him the real

ownership of the property. *Hamilton v. Wright,* 30 Iowa, 486; *Herbert v. Hanrick,* 16 Ala. 595; *Brooks v. Bruvn,* 35 Ill. 394. The legislature has extended the scope of the term, under certain restrictions, for the benefit of mere occupants of land who are in possession under claim of title for a period of five years, or for a less period where taxes are paid and valuable improvements made by them. Code, section 2967. Bearing this definition in mind, we have next to inquire how far, if at all, the defendant's status as the alleged holder of a colorable title is affected by the decree of the court in the principal cause, and by the statute upon which such decree was rendered. That statute, as it stood at the date of the deed, reads as follows: "All payments or compensation for intoxicating liquors sold in violation of this chapter, whether such payments or compensation be in money, goods, land, labor, or anything else whatsoever, shall be held to have been received in violation of the law and against equity and good conscience. * * * All sales, transfers, conveyances, mortgages, liens, attachments, pledges and security of every kind, which, either in whole or in part, shall have been made for or on account of intoxicating liquors sold in violation of this chapter, shall be utterly null and void against all persons and in all cases and no rights of any kind shall be acquired thereby." Code 1873, section 1550. Under these provisions the defendant's deed has been adjudged void. That a deed which is void, for want of title in the grantor, or for any irregularity in its execution or acknowledgement, or for any other cause not chargeable to the wrong or fraud of the grantee, is sufficient to constitute color of title, though denied by many authorities, may be regarded as well settled by the more modern decisions of the courts of this country. *Chicago, R. I. & P. Ry. Co. v. Allfree,* 64 Iowa, 504. But to constitute color of title for the purposes of asserting any right thereunder against the true owner, the deed or paper upon which it is sought to be based must have been obtained in good faith. *Smith v. Young,* 89 Iowa, 338. In the case

cited, Mrs. Young claimed to have color of title by virtue of
a deed which had been made to her under such circum-
stances that she was legally bound to know its invalidity, and
the court says: "Conceding that, to one not possessed of
the actual facts, the conveyance would have constituted a
color of title or claim of right, as a basis for the operation
of the statute of limitations, so as to justify a title by ad-
verse possession, no such rule obtains in favor of one ac-
tually knowing that he or she has no title or claim." In
Maryland it is held that "the paper title, to give color,
must be so far prima facie good in appearance as to be con-
sistent with the idea of good faith." *Baker v. Swan's Les-
see,* 32 Md. 355. "A deed fraudulently obtained is a nul-
lity, and gives the fraudulent grantee not even a colorable
title." *Crary v. Goodman,* 22 N. Y. 177. "A party can-
not have the advantage of an entry under color of title un-
less his deed which gives colorable title was obtained bona
fide. If obtained by fraud, or with knowledge that the
grantor had no title to convey, the deed will avail the gran-
tee nothing." *Foulke v. Bond,* 41 N. J. Law, 541. It is
true that these cases, as well as many others which might be
cited to the same point, have generally arisen where it has
been sought to perfect a colorable title by adverse posses-
sion, and not in a contest over improvements, but the prin-
ciple underlying the doctrine is the same in both instances.
Color of title, so far, at least, as it is based upon the deed,
is neither more nor less in one case than in the other; and
the defendants having taken a conveyance which they were
conclusively bound to know the statute denounced as "ut-
terly null and void against all persons and in all cases,"
and as conferring "no rights of any kind," they can-
not rely upon such instrument as giving them color
of title. It may be said that this deed was not obtained by
fraud, and that is true, in the sense that defendants did not,
so far as the evidence shows, in any manner deceive or over-
reach Mrs. Pralor in the attempted purchase of the prop-

erty; but the whole transaction was tainted with illegality and by the terms of the statute they are conclusively held to have received their deed "in violation of law and against equity and good conscience." No claim based upon such a foundation can be recognized or enforced in a court of equity.

II. It being determined that defendants obtained no color of title through Mrs. Pralor's deed, it remains to be ascertained whether they can base such claim upon the conceded fact that while in possession they paid taxes and made valuable improvements upon the property. That such acts of ownership would be a sufficient color of title, under the laws of this state, must be admitted if in so doing defendants can be said to have acted in good faith. What, then, is "good faith," as those words are here employed? Counsel for appellant insist that good faith is an honest belief in the validity of one's title, and such is substantially the definition given by many eminent authorities. Accepting that definition as correct, can a party be heard to say that by a conveyance obtained in violation of law, and in a manner which the statute says shall be treated as against equity and good conscience, he honestly believes himself invested with a good title? We think not. The doctrine of honest belief, even where the deed is tainted with no criminality in its origin, is subject to well-defined limitations. The claimant must not only entertain an honest belief in the validity of his title, but he must have some reasonable ground upon which to base such confidence. *Snell v. Mechan,* 80 Iowa, 83; *Johnson v. Schumacher,* 72 Tex. 334, (12 S. W. Rep. 207); *Singleton v. Jackson,* 2 Litt. 208; *Stark v. Starr,* 1 Sawy. 15, (Fed. Cas. No. 13,307); *Haymond v. Camden,* 48 W. Va. 463 (37 S. E. Rep. 642); *Williamson v. Jones,* 43 W. Va. 562, (27 S. E. Rep. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891); *Wales v. Coffin,* 100 Mass. 177; *Walker v. Quigg,* 6 Watts, 87, (31 Am. Dec. 452); *Dart v. Hercules,* 57 Ill. 446; *Woodhull v. Rosenthal,* 61 N. Y. 382; *Wood v. Wood,* 83 N. Y.

575; *Cook v. Kraft*, 3 Lans. 512; *Davidson v. Barclay*, 63 Pa. St. 406; *Gaines v. Kennedy*, 53 Miss. 103; *Deffeback v. Hawke*, 115, U. S. 392 (6 Sup. Ct. Rep. 95, 26 L. Ed. 423). In the last case cited, Field, J., says: "There can be no such thing as good faith where the party knows he has no title, and that under the law, which he is presumed to know, he can acquire none by his occupation." Possession in good faith involves not only honest belief in the possessor's title, but the absence of all knowledge on his part of any facts or circumstances which ought to put him upon inquiry, or tend to render his possession unconscientious. Bouvier, Law Dictionary. Black, Law Dictionary. Adam's Glossary defines a "bona fide possessor" as one "who, being in actual possession, is excusably ignorant of the facts which show he is not entitled to possess." This court has said that the making of improvements in good faith implies that the occupancy must also be bona fide. *Lunquest v. Ten Eyck*, 40 Iowa, 216. In other words, if the occupancy is stamped with any circumstance which conclusively indicates bad faith, then no improvements placed upon the property under such occupancy can be said to have been made in good faith. This is just the position in which defendants find themselves. They must be presumed to have known the law of the state. The statute, whatever we may, think of its wisdom or propriety, was plain, unambiguous, and emphatic, and commanded their obedience. They deliberately and in full view of the consequences undertook to encourage and promote a violation of the laws, and, as a means to that end, took this deed from Mrs. Pralor, and went into occupancy by her as their tenant. The character of the occupancy cannot be divorced from the character of the transaction by which their possession was obtained. Both fell under the ban of the statute which declares them to be in violation of law and against equity and good conscience." To hold otherwise is to say that a man may flagrantly violate the law, defy its penalties, and then come into court and have his offenses made the grounds of equit-

able relief. The many cases which have been or may be cited where courts have exercised great liberality, if not ingenuity, in extending the presumption of good faith for the relief of persons claiming compensation for improve· ments on land, will be found to have been cases of hardship, in which the misfortune of the party relieved is in no manner chargeable to his own wrong. On the other hand, the cases are numerous holding that where the instrument constituting the color of title was obtained by fraud, or with knowledge by the holder that it conveys no title, his possession is not in good faith. *Reay v. Butler,* 95 Cal. 206, (30 Pac. Rep. 208); *Crispen v. Hannavan,* 50 Mo. 536; *Saxton v. Hunt,* 20. N. J. Law, 487; *Foulke v. Bond,* 41 N. J. Law, 527; *Moore v. Brown,* 11 How. 414, (13 L. Ed. 751); *Eberts v. Eberts,* 55 Pa. St. 110; *Thompson v. Thompson,* 16 Wis. 91; *Mosley v. Miller,* 13 Bush, 408; *Linthicum v. Thomas,* 59 Md. 583. To these observations it may be added that where contracts have been made either in violation of the express letter of the law, or in contravention of its policy or spirit, no rights can be based thereon which the courts will recognize or enforce. This principle is not dependent upon any statutory enactment. *Guenther v. Dewien,* 11 Iowa, 133; *Reynolds v. Nichols,* 12 Iowa, 398. The contract between defendants and their grantor contemplated a violation of the law on the part of both parties to the deed, and the possession of the property was obtained and utilized in furtherance of that unlawful design. The financial loss, if any, which they thus suffer, is such only as they might have foreseen, and the law affords them no remedy.

III. Furthermore, we are constrained to hold that, whatever rights defendants might otherwise have had, their petition was filed too late to entitle them to relief under the occupying claimant's act. That act provides a special remedy, and he who seeks to avail himself of it must bring himself within the statute, and pursue the course there indicated. *Webster v. Stewart,* 6 Iowa, 403; *Lunquest v. Ten Eyck,* 40 Iowa, 213. This proceeding does

not contemplate the recovery of any personal judgment against the landowner, but is in the nature of an assertion of a lien upon the property by the party in possession, accompanied by the right to retain such possession until the lien is satisfied. *Dugan v. Von Puhl,* 8 Iowa, 265. It is so far analagous to the lien which a mechanic has upon personal property on which he has bestowed labor and skill, that he need not surrender possession until his claim has been discharged; but possession once lost, except by force or fraud, the lien is lost. To effectuate that lien, Code, section 2964,. provides that no execution shall issue to put the claimant out of possession after he has filed a petition for compensation for his improvements. The statute does not fix the time after judgment in which the petition must be filed; nor does it, in terms, provide for any stay of execution in anticipation of the filing of such pleading. It may be said that under these provisions the harsh or vindictive owner of the paramount title may demand execution immediately upon rendition of the judgment, and thus deprive the owner of the improvements of any opportunity to present his claim. Such, indeed, would be the case had not the court, in furtherance of the beneficent purposes of the statute, exercised a just discretion to prevent abuse of legal process. It has therefore been held that, even though the plaintiff insists upon his right to immediate execution for possession, the trial court may properly withhold it a reasonable time, for defendant to file his petition or take an appeal, if he elects so to do. *Strabala v. Lewis,* 80 Iowa, 510, It must therefore be presumed that had these defendants made known to the district court their desire for time to file their claim for improvements, or their desire to stay execution pending an appeal to this court, a proper order to that effect would have been granted. No such request was made, so far as the record shows; nor does it appear that, after the execution was in fact issued, any application was made to the court to recall the writ or to prevent its enforcement. It was, in fact, fully executed, and

no attempt was made to preserve defendant's rights as occupying claimants until the appeal from the decree had run its course through this court. That this loss or surrender of possession works the loss of their right to be regarded as accupying claimants must be accepted as the settled law of this state. *Webster v. Stewart,* 6 Iowa, 401; *Claussen v. Rayburn,* 14 Iowa, 137; *Blanchard v. Ware,* 43 Iowa, 530. The application of the case last above cited to the case in hand is explained and emphasized by reference to *Read v. Howe,* 49 Iowa, 65-68. It may be agreed that counsel's analysis of *Webster v. Stewart* is correct, and that such case does not go to the full extent of the doctrine in support of which it is quoted in *Claussen v. Rayburn, supra;* but, irrespective of this enlargement upon the first precedent, that doctrine has apparently received the sanction of the court for a period of 40 years, and, not appearing to be unreasonable or unjust, should not now be disturbed. It should be further said that the courts of other states having occupying claimant acts very similar to our own construe them in harmony with the opinion here expressed. *Bover v. Garner,* 116 N. C. 125, (21 S. E. Rep. 180); *Malone v. Stretch,* 69 Mo. 25; *Lemerand v. Railroad Co.,* 117 Mich. 309-315, (75 N. W. Rep. 763); *Van Den Brooks v. Correon,* 48 Mich. 283, (12 N. W. Rep. 206); *Leighton v. Young,* 3 C. C. A. 176, (52 Fed. Rep. 439, (10 U. S. App. 298). It follows that appellants' failure to file their petition before being ousted of the possession of the property is fatal to the assertion of any rights under the statute in question.

IV. It is urged by counsel that there is neither justice nor equity in permitting Mrs. Pralor, or the plaintiff, as her successor in interest, to profit by the appellants' loss; but this is a criticism for the consideration of the legislature, and cannot justify the court in ignoring the plain letter of the statute. Appellants, having voluntarily entered into the unlawful contract, knowing, as we presume they did, that in so doing they obtained no right or title which the law would recognize, are not in position to

complain; but it must be confessed the court would enter its judgment in this case with much greater satisfaction if the money and property thus forfeited could be applied to the benefit of the public treasury, rather than to the enrichment of the woman whose part in the transaction was no less culpable than that of the defendants themselves.

The judgment of the district court is AFFIRMED.