### MAXEY et al. v. PATTERSON et al.

No. 1518.

Court of Civil Appeals of Texas. Waco.

March 7, 1935.

Rehearing Denied May 9, 1935.

Wear & Wear, of Hillsboro, and Jas. W. & Chas. J. Stubbs, of Galveston, for appellants.

Frazier & Averitte, J. D. Stephenson, and Herman Eastland, Jr., all of Hillsboro, for appellees.

ALEXANDER, Justice.

This is an action in trespass to try title brought by John T. Maxey and others against Joe Patterson and others to recover the title and possession of a house and lot in the city of Hillsboro. The defendants pleaded not guilty and in the alternative sought to recover the value of certain improvements alleged to have been made in good faith on the property in question. The case was tried before the court without a jury and resulted in judgment for plaintiffs for title and possession of the land and in favor of the defendants for the value of the improvements made by them and their predecessors in title. The plaintiffs appealed.

The plaintiffs' contention is that under the undisputed testimony the defendants were not entitled to recover for the value of the improvements placed on the premises. The facts are substantially as follows: Carrie Wicks was the common source of title. She was a colored woman. She acquired the lot in question as her separate property about the year 1886. She and her husband, Robert Wicks, occupied the property as their homestead until her death. She died in 1925, leaving a will which was duly admitted to probate in Hill county in June of the same year. By the terms of the will, the property in question was devised to her sister, Sarah Williams. The plaintiffs are the heirs of Sarah Williams, deceased. After the death of Carrie Wicks, Robert Wicks married Callie Wicks and continued to occupy the property as a homestead until about the year 1928, when

the improvements thereon burned. Thereafter, the said Robert Wicks and his second wife, Callie Wicks, by warranty deed dated December 29, 1928, conveyed the property to Joe Patterson and others as trustees of the Hillsboro Independent School District, and said trustees by warranty deed dated March 18, 1929, conveyed the property to Coleman Winkfield and wife, Nora Winkfield. The defendants are the heirs, legal representatives, and grantees of Coleman and Nora Winkfield. At the time Robert Wicks and his second wife conveyed the property to said school trustees, he made and presented to the school board an affidavit in which he stated that his former wife, Carrie Wicks, had died without leaving any will and without leaving a father, mother, or any child, and that she left surviving her only one brother, who had not been heard from for five or six years. Mr. Frazier, an attorney and a member of the school board, represented the trustees in purchasing the property from Robert Wicks. He examined the title records of Hill county with reference to the condition of the title down to the time when Carrie Wicks owned the property, but did not examine such records for the purpose of ascertaining the condition of the title subsequent to her death. He testified that the reason he did not do so was because of the affidavit furnished to him by Robert Wicks and because from his general experience he knew that a colored person seldom made a will. At the time the Winkfields purchased said property from said school board, Mr. Frazier, who was a reputable attorney, and others represented to them that the title to the property was good. The Winkfields were illiterate negroes, in poor health, and relied implicitly on said representations, and particularly the representations made by Mr. Frazier. The vacant lot was worth $100. The Winkfields and John Wynne, who subsequently bought a part of the property, made permanent and valuable improvements on the property and enhanced its value to the amount of $1,000. They had been in adverse possession of the property for more than one year at the time of the filing of this suit. None of the purchasers, the school board, the Winkfields, or Wynne ever demanded an abstract of title or undertook to search the records to ascertain the condition of the title subsequent to the death of Carrie Wicks.

The trial court found that the Winkfields and Wynne made the improvements on the property in good faith, and that they were entitled to recover therefor. The appellants challenged the correctness of such finding, and contend that as a matter of law said parties could not be classed as improvers in good faith because they failed to make a proper examination of the records and because an examination of such records would have readily disclosed that they had no title to the property. It is undisputed that the will of Carrie Wicks had been probated and was of record in the probate minutes of Hill county at the time the Winkfields purchased the property and placed the improvements thereon, and that an examination of such records would have disclosed to them that they did not have any title to the property. The material question to be determined is whether or not under such circumstances they can be classed as improvers in good faith within the meaning of Revised Statutes, art. 7393.

There is a line of authorities in which it is apparently held that one who purchases land without examining the title records cannot be said to be an improver in good faith within the meaning of the statute when an examination of such records would have readily disclosed that he did not have title to the property. Armstrong v. Oppenheimer, 84 Tex. 365, 19 S. W. 520; Parrish v. Jackson, 69 Tex. 614, 7 S. W. 486. However, an examination of the opinion in Armstrong v. Oppenheimer will disclose that the vendor in that case was a naked trespasser who did not even think that he had good title to the property. The vendee did not make the slightest effort to ascertain the condition of the title, but relied solely on the fact that he received a warranty deed. In Parrish v. Jackson, the property was conveyed to defendant by a special warranty deed, which, in itself, the court held, cast a suspicion on his title. He made no effort whatever to examine the title records. Other than the fact that he had received a deed to the property, there were no circumstances to lead him to believe that he had good title to it. The trial court held against the plea of good faith, and the Supreme Court held that the evidence was insufficient to require a reversal of the judgment of the lower court.

■ Ordinarily, where one seeks to recover for the value of improvements placed by him on the property of another on the ground that he did so in good faith, believing that the property was his own, the question of his good faith is one of fact to be

determined by the trial judge or jury, and, as said by the Supreme Court in Holstein v. Adams, 72 Tex. 485, 10 S. W. 560, 563, "The existence of good faith is a fact to be established in such cases by evidence of other facts tending to show that the person asserting it, at the time he made improvements on land, believed himself to be its owner, and had grounds for such belief, such as would ordinarily be satisfactory to one unlearned in the law, but of ordinary intelligence, after having made such inquiry as the law presumes every person desiring to buy land will make, and as an ordinarily prudent man for his own protection ought to make." Johnson v. Schumacher, 72 Tex. 334, 338, 12 S. W. 207; Louder v. Schluter, 78 Tex. 103, 14 S. W. 205, 207; Gaither v. Hanrick, 69 Tex. 92, 99, 6 S. W. 619; West Lumber Co. v. Chessher (Tex. Civ. App.) 146 S. W. 976.

■■■ The rule which allows one to recover for improvements so placed by him on the property of another has its origin in the principles of equity and is based on a sound policy which requires fair and honest dealing between man and man. Saunders v. Wilson, 19 Tex. 194; Wood v. Cahill, 21 Tex. Civ. App. 38, 50 S. W. 1071, Therefore, the right thus recognized by the statute ought not to be defeated by the application of unnecessary technical rules. In the case at bar, the school board, at the time it purchased the property, was represented by a competent and reputable attorney. He made such investigation of the title records as appeared to him to be reasonably necessary to protect the interest of the school district. In addition, he demanded and received from the vendor, who was in possession of the property, an affidavit showing that he had inherited the property from his deceased wife to whom it belonged at the time of her death. On the faith of the information thus obtained, the school board invested the funds of the school district. The Winkfields, who later purchased and improved the property, were illiterate negroes, and in such a state of health that they were confined to their beds most of the time. They could not have made a personal examination of the records had they desired to do so. It would have been necessary for them to employ an attorney and to accept his opinion as to the condition of the title. Instead of employing an independent attorney to make the investigation for them, they accepted the opinion of the attorney for the school board in whom they had the utmost confidence. As evidence of their good faith, they paid full value for the property. The vacant lot was worth only $100. The improvements have enhanced its value tenfold. To deny the defendants the right to recover for such improvements would result not only in an injustice to them, but a manifest unfair advantage in favor of the plaintiffs. After carefully considering the record, we have reached the conclusion that the evidence is sufficient to support the trial court's finding that the improvements were made in good faith. We overrule appellants' contentions in this respect.

■■■ At the time Robert Wicks conveyed the property to the school board, he, as the surviving husband of Carrie Wicks, deceased, had a homestead interest in the property and hence a right to occupy it as such for the remainder of his life. The defendants, by cross-assignment, contend that this right of occupancy could be assigned by Robert Wicks and that defendants as subsequent grantees under him acquired such right, and that consequently the court erred in entering judgment for plaintiffs for the title and possession of the land. In other words, they contend that even though Robert Wicks owned no title to the fee, since he as the surviving constituent member of the family had a right to occupy the property as a homestead for the remainder of his life, he could and did convey such right so that defendants as his successors in title have the right to occupy the property for the remainder of his life. We do not subscribe to this doctrine. The privilege of occupancy growing out of the mere naked right of homestead as distinguished from an interest in the fee is personal to the constituent members of the family. Hence it does not pass to others by inheritance, Pressley's Heirs v. Robinson, 57 Tex. 453–459, and for the same reason cannot be transmitted by a conveyance. The constituent members of the family may occupy the premises themselves or they may lease the same temporarily to others, but when they once permanently abandoned the premises, having an intention never to return thereto, they surrender their homestead interest and lose the right to occupy the property either in person or through others. A conveyance by the homesteader which would otherwise be sufficient to carry a permanent right of occupancy, when followed by a surrender of possession, would evidence a permanent abandonment of the premises, and thus destroy the very right intended to be conveyed thereby.

De Hymel v. Scottish-American Mortgage Co., 80 Tex. 493, 16 S. W. 311. The trial court did not err in this respect.

We have considered all other assignments, and find them without merit.

The judgment of the trial court is affirmed.