WILLIAM WALCH, Appellant, v. ALLAN F. BECK, Executor, et al., Appellees.

No. 45403.

MARCH 18, 1941.

Smith & Beck, for appellant.

L. A. Moe and Raymond Zebker, for appellees E. F. Graham and Jacob Balduf.

GARFIELD, J.—On October 18, 1927, Catherine A. McMillan mortgaged to plaintiff-appellant, William Walch, Lots 1 to 4, Block 36, Railroad Addition to Mason City, to secure a note for $600 due October 18, 1932. On April 8, 1930, the same owner also mortgaged to appellant Lots 1 and 2 to secure a note for $400 due April 9, 1932. Both mortgages were duly recorded. When each mortgage was made a house stood upon Lots 1 and 2. Upon the death of the mortgagor in 1931, a son, H. L. McMillan of Minneapolis, became the owner of the mortgaged premises.

In the fall of 1931 E. F. Graham, appellee, not knowing the property was mortgaged, purchased the house from H. L. McMillan for $25, without the consent or approval of appellant. The deal was made over the telephone. Appellee tore down parts of the house and moved the remainder to a lot owned by him in

another addition where, at a cost to him of about $900, it was rebuilt and placed on a permanent basement and foundation.

Nothing was ever paid on the principal of either mortgage. Interest was unpaid on both mortgages from October 1930. No taxes were paid on the mortgaged lots for 1931 to 1938, inclusive. The mortgages by their terms both fell due in 1932. Foreclosure was commenced December 18, 1939. Appellant sought to subject the house as well as the mortgaged lots to the lien of the mortgages. Although $1,000 was the total principal of both mortgages, more than $1,800 was due thereon at the time of trial in April 1940, and there were then unpaid taxes against the lots in excess of $300. Although the estate of the mortgagor was in probate in Mason City, Cerro Gordo county, commencing in August 1931, was solvent and still pending at the time of trial, appellant, a resident of the same county, filed no claim against the estate.

The trial court found that appellee (Graham) acted in entire good faith; that at the time of removal of the house it was worthless and constituted a dangerous nuisance; that if the house had not been removed, it would be a detriment to the mortgaged premises; that appellant was guilty of laches and negligent delay in instituting foreclosure; that appellant could have collected the mortgage notes by filing a claim against the estate of Catherine A. McMillan; that equitable circumstances did not justify granting relief as against the house.

Upon the trial, the only evidence offered by appellant was his notes and mortgages. The house was at least 75 years old, one story high, about 18x20 feet, had been vacant "for a long time." "It was pretty well wrecked * * * had mighty little value." The house had no windows, doors or sills, the plaster was off, the chimney was partly torn down, the foundation half or two thirds taken out, the basement was half caved in. It had no furnace, electricity, water or sewer. The neighborhood children had been playing through the house. The house had been condemned, presumably by the proper city authorities. Appellee testified: "I didn't think anyone would have money loaned against a place of that kind." The undisputed testimony shows that the mortgaged lots were worth no less after the house was moved off.

From what has been said, the injustice of permitting appellant to enforce his mortgages as against the house must be apparent. Both sides concede there is no similar case in Iowa. And it is surprising that but few like cases are to be found in other jurisdictions. Appellant's counsel, apparently after extended search, cite five cases in support of their contention that the lien of the mortgages followed the house to its new location: Hamlin v. Parsons, 12 Minn. 108, 90 Am. Dec. 284; Partridge v. Hemenway, 89 Mich. 454, 50 N. W. 1084, 28 Am. St. Rep. 322; Johnson v. Bratton, 112 Mich. 319, 70 N. W. 1021; Dakota Loan and Trust Co. v. Parmalee, 5 S. D. 341, 58 N. W. 811; Turner v. Mebane, 110 N. C. 413, 14 S. E. 974, 28 Am. St. Rep. 697.

We have carefully examined all of these decisions as well as the numerous authorities cited by both parties in support of the various propositions urged by them. Without taking time to analyze each decision, we are convinced that none of the cases is in point on its facts nor entitled to controlling consideration. In some of the cited cases the buildings were removed by the mortgagor in a wilful attempt to deprive the mortgagee of his lien thereon. In none of the cases did the evidence show that the removal of the building did not lessen the value of the security. No case is cited where, as here, a purchaser with honest motives expended anything like 30 to 40 times the value of the removed structure in rebuilding it to other land. The inapplicability of appellant's authorities is shown by the following quotation from the first of the above cited cases, Hamlin v. Parsons, supra (page 112 of 12 Minn., page 286 of 90 Am. Dec.):

"The facts in the case do not show that the questions arising as to the right of the mortgagee to a lien upon the house are complicated, by any such substantial alterations in the building as have sometimes been held to affect and change the title to property altered from its original form, nor by any intervening rights of innocent third parties."

Appellee cites as authority for his contention that the house, by its removal from the mortgaged lots and annexation to another lot owned by him, ceased to be subject to the lien

of appellant's mortgages, Harris v. Bannon, 78 Ky. 568, 1 Ky. Law Rep. 259; Buckout v. Swift, 27 Cal. 433, 87 Am. Dec. 90; and Betz v. Verner, 46 N. J. Eq. 256, 19 A. 206, 7 L. R. A. 630, 19 Am. St. Rep. 387. Appellant concedes that Buckout v. Swift is contrary to his contention but says it is unsound. The decision has been frequently criticised. In Harris v. Bannon, the owner of land subject to a duly recorded mortgage sold off the houses situated on the land. The purchaser moved them to other lands to which they were annexed. The court refused to subject the houses to the lien of the original mortgage. Betz v. Verner, supra, holds that where a building on mortgaged land is severed and affixed to other land and then sold to a bona fide purchaser, the mortgagee is relegated to an action at law for diminution in value of his security. Without taking further time to discuss the above authorities, it is apparent that what few cases are to be found on the subject are not in agreement. The subject is discussed in 1 Jones on Mortgages, 8th Ed., pages 745 to 750, sections 564 and 565; 19 R. C. L. 325, section 101; 22 Am. Jur. 748, section 38.

We think there can be no question but what appellant could, had he acted in time, have brought suit to restrain the removal of the house from the mortgaged lots, or brought an action at law for damage to his security by the removal of the house, provided, of course, he could show that the value of the security was thereby lessened. But in such action at law, the measure of recovery would be the difference in value of the security before and after the removal of the house, rather than the value of the structure. Bates v. Humboldt County, 224 Iowa 841, 277 N. W. 715, and cases cited therein. The above cases cited by appellee and the texts mentioned make it clear that under some authorities, although perhaps a minority, the lien of a mortgage on land is lost as to a building situated thereon which is sold to one having no knowledge of the mortgage and by him moved and annexed to other land. Without undertaking to declare ourselves on this question, we think sound basis, under the peculiar facts shown here, can be found for the trial court's decree under another line of decisions or at least by analogy thereto.

It is a well recognized rule of law that where one, in reliance on a supposed right, without intending any wrong, expends

labor and material on property of another which greatly enhance its value and the value of the original property is insignificant in comparison with the value of the finished product, title to the property in its converted form will pass to the person who has thus added his labor and materials, compensating the original owner for the value of the original property., 1 C. J. S. 418, 419, section 5b(3). Clearly, appellant as mortgagee has no greater rights to the house in question than if he were owner. He is not asking compensation for the value of the house at the time of its removal. In 1 Am. Jur. 208, section 21, we find the following:

"This rule is especially applicable to cases in which the accession of value to the original material is so far beyond the original value as to impress on the reason of mankind the injustice of permitting the bona fide producer of that increased value to be deprived of it.

"The rule for these cases is arbitrary; it must depend on a sound discretion, exercised on the peculiar circumstances of each individual case. Therefore, a decision in one case cannot be conclusive authority for any other case of different circumstances."

It is true the cases have applied this doctrine more frequently to personal property than to real estate or buildings. Nevertheless we think the above reasoning is applicable here. Three leading and widely quoted cases involving this rule of law are Wetherbee v. Green, 22 Mich. 311, 7 Am. Rep. 653 (opinion by Judge Cooley) ; Lampton v. Preston, 1 J. J. Marshall 454 (24 Ky. 313), 19 Am. Dec. 104; and Carpenter v. Lingenfelter, 42 Neb. 728, 60 N. W. 1022, 32 L. R. A. 422. Other authorities recognizing the rule are Baker v. Meisch, 29 Neb. 227, 45 N. W. 685; and Ochoa v. Rogers, Tex. Civ. App., 234 S. W. 693. In the Ochoa case the defendant innocently purchased a stolen automobile for $85 which he made into a delivery truck at an expense of $800. The true owner of the automobile brought suit to recover possession of the truck, or, in the alternative, its value. Recovery was limited, however, to $85. This case, which has been frequently cited, states the rule as follows (page 695 of 234 S. W.) :

" "* * * when the appropriation of property is made in good

faith under a mistake of facts, and the taker has by labor expended upon said property converted it into a thing entirely different from the original and of greatly increased value, the title to the property will pass to the person by whose labor the change has been wrought, and the original owner can only recover the value of the article at the time it was taken.' "

This doctrine is recognized in the two Iowa cases of Lewis v. Courtright, 77 Iowa 190, 41 N. W. 615 (citing both Wetherbee v. Green and Lampton v. Preston, supra), and Polk County v. Parker, 178 Iowa 936, 160 N. W. 320, L. R. A. 1917B, 1176. In Lewis v. Courtright the defendant entered upon a tract of land owned by the plaintiff, cut grass therefrom and made it into hay, stacking it on land belonging to the defendant. Plaintiff sought to recover the hay. This court refused relief, saying (pages 191 and 192 of 77 Iowa, page 616 of 41 N. W.):

"Under these facts, we think it would be manifestly unjust to hold that the ownership by the plaintiff of the grass gave him title to the hay. It is true the hay in stack is the grass which belonged to plaintiff, cut and cured, and preserved for use; but the labor of defendant, rendered in good faith, under a claim of right, gave to the hay substantially, all its value."

 Every essential recognized in the line of authorities above referred to (and many more cases might be cited) seems to us to be present in the case before us. It is true the recording of appellant's mortgages imparted constructive notice to appellee. However, appellee was entirely innocent; he committed no intentional wrong. The house was of trifling value. Its removal did not lessen the value of the security. In its new location the part of the house which was moved was of substantial value only because of the labor and materials expended by appellee which, as above stated, were 30 to 40 times the value of the original structure. The authorities make it plain that this matter of relative values is an important if, indeed, not a controlling consideration. It would be an extreme hardship upon appellee to deprive him of this reconstructed house and, it seems to us, would result in unjust enrichment to ap-

pellant. As having some bearing see Rainsbarger v. Rainsbarger, 208 Iowa 764, 224 N. W. 45.

The above conclusion makes it unnecessary for us to consider other questions presented. The decree is right and it is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.