GRACE MEYERS, substituted party plaintiff for ELMER HOLLINBERGER, deceased, appellant, v. JOHN W. CANUTT et al., appellees.

### No. 47742.

(Reported in 46 N.W.2d 72)

694

FEBRUARY 6, 1951.

REHEARING DENIED MAY 11, 1951.

Gordon B. Russell, of Adel, for appellant.

George H. Sackett, of Perry, for appellees.

GARFIELD, J.—After the trial Elmer Hollinberger, original plaintiff, died and Grace Meyers was substituted as plaintiff.

However, for convenience we will refer to Hollinberger as plaintiff.

Ashbel W. and John L. Canutt, brothers, formerly owned two lots in Adel. Ashbel acquired the interest of John L. Upon Ashbel's death sometime before 1920 the property descended to his widow, Sarah Jane, and five adult children. The family dwelling was located on the north half of the lots. In March 1924, the widow deeded her one-third interest in the property to her son John W. Canutt, a defendant. However, the deed was not filed for record until March 1938. The widow continued to reside on the premises.

In December 1926, plaintiff (seventy-nine at time of trial) married the widow Sarah Jane (a blind pensioner) and moved into the dwelling with her on the north half of the lots. In the summer of 1930 plaintiff purchased a seven-room house for $250, dug a basement on the south half of the lots, built a foundation, moved and set the house on the foundation, repaired and painted the house, built a chimney, dug a sewer, installed a used furnace and moved a garage onto the premises. Plaintiff, a mechanic, did much of the work himself, the rest he hired and paid for. The total cost to him (including the $250) was about $700, according to his oral testimony. The exhibits indicate the cost exceeded $700.

Plaintiff and Sarah Jane occupied this house on the south half of the lots from 1930 until Sarah Jane died in March 1943. Plaintiff then continued to live there until April 1945, when he rented it to one McAtee, reserving a bed for himself. Some of plaintiff's belongings remained in the house and garage, he continued to use the garage and get his mail at the house. In July 1948, defendant John W. Canutt, who apparently acquired the interests of his brothers and sisters in the two lots, sold them to Gottschalk who notified McAtee to pay plaintiff no more rent.

A few days after this sale to Gottschalk plaintiff brought this action against John W. Canutt and wife and Gottschalk and wife to quiet title to the south half of the lots on the theory of adverse possession and, in a second count, to recover for the improvements placed thereon by plaintiff under the occupying-claimants law (chapter 560, Code, 1946). At the conclusion of plaintiff's evidence, on defendants' motion, plaintiff's petition

was dismissed and he has appealed. The trial court's decision seems to be largely based on the conclusion plaintiff did not claim to be the owner of the property or at least there was insufficient basis for plaintiff to believe he was the owner.

I. We are agreed plaintiff has failed to establish title on the theory of adverse possession. To establish ownership by adverse possession plaintiff was required to prove hostile, actual, open, exclusive and continuous possession, under claim of right or color of title, for at least ten years. While title by adverse possession is a legal title in fee simple, the doctrine is to be taken strictly. The acts of one who claims property of another by adverse possession are to be strictly construed. The law presumes possession of land is under the regular title. Nichols v. Kirchner, 241 Iowa 99, 103, 40 N.W.2d 13, 16, and citations. See also 1 Am. Jur., Adverse Possession, sections 126, 238; 2 C.J.S., Adverse Possession, sections 8, 214a, 215.

"In an action involving a claim of title by adverse possession every presumption * * * is against the claimant * * *." 2 C.J.S., Adverse Possession, section 215a.

II. Code section 560.1 authorizes recovery by an occupant of real estate who has color of title for valuable improvements made thereon in good faith. The two essentials for recovery are color of title and good faith in making the improvements. Lunquest v. Ten Eyck, 40 Iowa 213, 215; Betz v. Sioux City, 240 Iowa 941, 944, 38 N.W.2d 628, 630.

Defendants do not question the procedure adopted by plaintiff to obtain relief as an occupying claimant and we are not inclined to do so upon our own motion. It is a consideration of some importance, favorable to plaintiff, that the suit is in equity, tried as such and not as an ordinary action like the usual occupying-claimant petition under Code section 560.3.

Betz v. Sioux City, 239 Iowa 95, 99, 30 N.W.2d 778, 780, clearly points out the inequitable character of the early common-law rule that the owner of land was under no liability to pay for improvements made thereon by an occupying claimant and says:

"The nature and purpose of these occupying-claimant statutes are such that courts have uniformly accorded them a broad and liberal construction. As said * * * in Stump v. Hornback, 109 Mo. 272, 280, 18 S.W. 37, 39: 'The statute growing out

of the application of equitable principles should be given a liberal construction so as to do, as far as possible, under its provisions, complete justice between the parties.'

·"* * * Maxey v. Patterson, 82 S.W.2d 386, 388, expressed a like thought:

" 'The rule which allows one to recover for improvements so placed by him on the property of another has its origin in the principles of equity and is based on a sound policy which requires fair and honest dealing between man and man. [Citing cases.] Therefore, the right thus recognized by the statute ought not to be defeated by the application of unnecessary technical rules.' "

Several other authorities to the same general effect are cited in the Betz opinion in 239 Iowa. (Betz v. Sioux City was before us three times.) The rule of liberal statutory construction stated in Code section 4.2 also seems peculiarly applicable to chapter 560. We are therefore justified in looking more favorably upon plaintiff's claim for compensation under the occupying-claimants law than upon his claim of ownership under the theory of adverse possession.

■■ III. There can be little doubt plaintiff had color of title within the meaning of chapter 560. Section 560.2, paragraph 2, provides that one has color of title "who has by himself or together with those under whom he claims, occupied the premises for a period of five years continuously." That five years continuous occupancy constitutes color of title under this law see Craton v. Wright, 16 Iowa 133, 137; Lunquest v. Ten Eyck, supra, 40 Iowa 213; Welles v. Newsom, 76 Iowa 81, 83, 40 N.W. 105; Betz v. Sioux City, supra, 240 Iowa 941, 945, 38 N.W.2d 628, 630.

Plaintiff continuously occupied the south half of the lots as his home from the summer of 1930 until his wife died in March 1943. Thereafter he was a continuous occupant at least until defendant John Canutt sold to Gottschalk in July 1948. Occupancy of plaintiff's tenant from April 1945 until the sale to Gottschalk was the equivalent of personal occupancy by plaintiff. Parsons v. Moses (Dillon, J.), 16 Iowa 440, 441, 442, cited with approval in Betz v. Sioux City, supra, 239 Iowa 95, 99, 30 N.W.2d 778, 780.

■ It is no defense that plaintiff placed the improvements upon the premises before he had occupied them at least five years. Benton v. Dumbarton Realty Co., 161 Iowa 600, 611–613, 143 N.W. 586.

■ IV. The only requirement of section 560.1 other than color of title is that the improvements be made "in good faith." Lunquest v. Ten Eyck, supra, states (page 216 of 40 Iowa) "this implies that the occupancy must be bona fide."

Lindt v. Uihlein, 116 Iowa 48, 55, 89 N.W. 214, 216, says: "This court has said that the making of improvements in good faith implies that the occupancy must also be bona fide. Lunquest v. Ten Eyck, 40 Iowa 216. In other words, if the occupancy is stamped with any circumstance which conclusively indicates bad faith, then no improvements placed upon the property under such occupancy can be said to have been made in good faith." The Lindt opinion also (page 56 of 116 Iowa) takes note of "The many cases * * * where courts have exercised great liberality, if not ingenuity, in extending *the presumption of good faith* for the relief of persons claiming compensation for improvements on land * * *." (Italics added.)

■ Read v. Howe, 49 Iowa 65, 67, 68, cited with approval in Betz v. Sioux City, supra, 239 Iowa 95, 100, 30 N.W.2d 778, 781, states: "* * * we are not disposed to put upon the words *good faith,* as used in the statute, any technical construction. We think that they are to be taken in their ordinary acceptation."

Good faith in a like connection has been held to be a question of fact to be determined in each particular case. The term is used in its popular sense, as the actual, existing state of mind, whether so from ignorance, sophistry or delusion, without regard to what it should be from given legal standards. Good faith has also been defined as freedom from a design to defraud the person having the better title. Searl v. School District, 133 U. S. 553, 563, 564, 10 S. Ct. 374, 377, 33 L. Ed. 740, 746, and citations; State v. West Branch Lbr. Co., 64 W. Va. 673, 63 S.E. 372, 380, 381.

■ We think we are justified in not giving the term "good faith" any narrow or technical meaning here. To do so would

not give to chapter 560 the broad and liberal interpretation we have held it should receive. In the absence of evidence for defendants (as stated, the trial court saw fit to dismiss plaintiff's action at the conclusion of his testimony) we hold there is sufficient showing of good faith on the part of plaintiff.

 Payment of taxes is evidence of good faith. Benton v. Dumbarton Realty Co., 161 Iowa 600, 608, 143 N.W. 586. So is the mere fact plaintiff improved the land at his own expense. Ibid. at page 613 of 161 Iowa. It is undisputed that plaintiff paid all taxes on lots 1 and 2, and the special assessments for paving and sewer, from 1926 to 1949. A real estate broker valued the paving at $500 and the sewer at $200. Plaintiff testified without dispute nobody objected to his making the improvements and he "thought he was doing all right."

The receipts for taxes paid by plaintiff listed the property owners as Ashbel W. and John L. (not defendant John W.) Canutt until 1943 when John W.'s name was added as an owner. This was seventeen years after plaintiff started paying the taxes, thirteen years after he erected the improvements. Plaintiff of course knew Ashbel and his brother John L. had long been dead and that Sarah Jane was Ashbel's widow. Plaintiff testified he paid the taxes "because I was living there and making it my home. The taxes was due. It was on my property."

On cross-examination plaintiff admitted he never acquired title to the lots by deed or bought them from anyone. He also said "It was already mine after we were married, partly. I didn't need to buy it. * * * I did not know how the record title stood. * * * My wife's name was on the homestead papers." Plaintiff also frankly and commendably admitted, "I wasn't trying to defeat the title of anybody when I paid the taxes."

We have mentioned about all the evidence bearing on the question of good faith. There is no evidence plaintiff had any knowledge of the deed from Sarah Jane to John W. until the sale to Gottschalk a few days before this suit was started.

It seems extremely unjust and inequitable to allow defendant John W. Canutt the full benefit of these improvements without requiring him to compensate plaintiff at least for the cost thereof.

V. Code section 560.3 provides that "the value of the real estate and of such improvements" shall be separately ascertained. Section 560.4 states the owner of the land may thereupon pay the appraised value of the improvements and take the property. If the owner fails to do so within such reasonable time as the court may fix, the occupying claimant may pay the value of the property exclusive of the improvements and take the property and improvements.

Betz v. Sioux City, supra, 240 Iowa 941, 945, 38 N.W.2d 628, 630, says, perhaps by way of dictum since it was there held no "valuable improvements" were made, that an occupying claimant cannot be allowed more than the cost to him of the improvements. This is the rule in some but not all jurisdictions. 42 C. J. S., Improvements, section 11. See also 27 Am. Jur., Improvements, section 22. We have held that where the cost of the improvements exceeds the amount they add to the value of the property only such added value should be allowed: Gleiser v. McGregor, 85 Iowa 489, 491, 52 N.W. 366, and citations.

The undisputed evidence is that the value of the lots when plaintiff came there was $50. A real estate broker who was not cross-examined testified the ground, without paving and sewer, is now worth $300 and the whole property $4000. Plaintiff placed the present value of the property at "$6000 or $5000." It rented for $30 per month. It is obvious the improvements erected by plaintiff made the property several times more valuable.

Although it seems inequitable to limit plaintiff's recovery to the mere cost to him of the improvements we are disposed to adhere to the statement in Betz v. Sioux City, supra, 240 Iowa 941, 945. We think, however, plaintiff should be allowed reasonable compensation for his own time in making the improvements as well as reimbursement for his expenditures. Such an allowance would be very much less than the amount the improvements enhanced the value of the property.

As indicated, the record is not clear as to the cost to plaintiff of the improvements. We are therefore remanding the case to the district court to determine, if the parties do not agree, the allowance to plaintiff. Plaintiff is entitled to a lien on the property for such amount, with interest at five per cent from the time this suit was commenced. On the question of interest in cases of this kind

see 42 C. J. S., Improvements, section 11b, and 27 Am. Jur., Improvements, section 22.

As having some bearing on the case generally see Rainsbarger v. Rainsbarger, 208 Iowa 764, 224 N.W. 45, cited with approval in Walch v. Beck, 230 Iowa 146, 153, 296 N.W. 780, 783.— Reversed and remanded.

BLISS, MANTZ, HAYS, and THOMPSON, JJ., concur.

OLIVER, J., and WENNERSTRUM, C.J., and SMITH and MULRONEY, JJ., dissent.

OLIVER, J. (dissenting)—I respectfully dissent:

I agree plaintiff failed to establish title on the theory of adverse possession, but am unable to agree he is entitled to recover as an occupying claimant under chapter 560 of the Code. Hence, I would affirm the judgment of the trial court.

The only interest Sarah Jane Canutt ever had in the two lots was the one-third (dower) interest which she took upon the death of her first husband and which she subsequently conveyed to defendant John W. Canutt. It is not contended this conveyance did not include all of her undivided interest in the property. Nor did plaintiff attempt to prove he did not know of the conveyance. He pleaded, but again offered no evidence, that it was without consideration and pursuant to an understanding that Sarah would "retain ownership and possession of said property."

Plaintiff's petition alleged his wife, Sarah Jane, remained in possession of the property under claim of ownership from 1924 until her death in 1943. It alleged also that since 1930 plaintiff himself was in hostile and exclusive possession under claim of right and color of title. These allegations are obviously repugnant. If Sarah Jane remained in possession until 1943 plaintiff could not have been in exclusive possession since 1930. His holding was not adverse to her. Keas v. Burns, 23 Iowa 235. His evidence tended to show only that upon his marriage to Sarah Jane Canutt he moved into the home with her, paid taxes, made the improvements here in question in 1930, then moved into the improved property, lived there with Sarah Jane, and after her death rented it to others. With reference to the improvements

he testified, "nobody objected to it and thought he was doing all right."

He testified also he never acquired title to the real estate by deed and never claimed he bought it at any time: "It was already mine after we were married, partly. I didn't need to buy it. Q. Then it is your contention, is it Mr. Hollinberger, that because you married Mrs. Canutt that that property became your property? A. Partly. Q. That is what you claim. You don't claim that you ever bought it from anybody, or that you ever acquired a deed for it from anybody, do you? A. No." He testified he paid the taxes, "Why, because I was living there and making it my home. The taxes was due and I paid them. It was on my property." Plaintiff testified he did not know who was the record titleholder and that the tax receipts were in the names of John Canutt and Ashbel Canutt.

To entitle an occupant of real estate to the benefits of the Occupying Claimants chapter, Code section 560.1 requires, among other things: (1) That he have color of title thereto, and (2) that he has made valuable improvements in good faith.

Section 560.2 provides, in part, persons who occupy premises for five years or who occupy premises for less than five years and pay taxes which are not repaid or tendered within two years "shall be deemed to have color of title within the meaning of this chapter."

The trial court found:

"The plaintiff has not shown that he has in good faith, as good faith is considered under this chapter, made valuable improvements on the premises. He has not shown that he intended in 1930, at the time of making the improvements, to claim any interest in the real estate. His testimony shows that at the time he made the improvements he thought his wife was the owner of the property, or at least she had some interest therein."

Snell v. Mechan, 80 Iowa 53, 54, 45 N.W. 398, points out that good faith requires that the improvements be made under the belief claimant has such a right to or interest in the land as authorizes him to make them, and *reasonable grounds for such belief must exist*. The mere hope or expectation of securing the prop-

erty at some time in the future does not constitute such good faith.

Lindt v. Uihlein, 116 Iowa 48, 54, 89 N.W. 214, 216, states:

"The doctrine of honest belief * * * is subject to well-defined limitations. The claimant must not only entertain an honest belief in the validity of his title, but he must have some reasonable ground upon which to base such confidence."

Plaintiff believed Sarah Jane owned the property or had an interest in it. His testimony that it became his property, partly, when he married her, if taken literally, is unrealistic. It does not furnish reasonable grounds for an honest belief that the marriage gave him anything more than an expectation of inheriting the property or receiving a spouse's share or rights in it in case of her death during his life.

With reference to good faith, 2 C. J. S., Adverse Possession, section 170, page 743, states:

"In some jurisdictions good faith means merely the absence of an intent to deceive, mislead, or defraud in the acquisition of color of title * * *. In other jurisdictions good faith in the claim of right, title, or possession has been construed to require, on the part of claimant, an honest belief, based on reasonable grounds, that when he obtained his deed relied on as color of title he acquired a valid legal title * * *", citing and quoting from McFerrin v. Wiltse, 210 Iowa 627, 231 N.W. 438, "Something must exist upon which he may in good faith base such a claim."

A headnote in 42 C. J. S., Improvements, section 7b(2), page 433, thus states the general rule as to occupying claimants: "Good faith on the part of an occupant of land claiming compensation for improvements requires his honest and reasonable belief in his title and ownership."

16 Am. and Eng. Ency. of Law, Second Ed., Improvements, section 4b, pages 85, 86, states:

"By good faith is meant an honest belief on the part of the occupant that he has secured a good title to the property in question and is the rightful owner thereof. And for this belief there must be some reasonable grounds such as would lead a man of ordinary prudence to entertain it."

The text in 27 Am. Jur., Improvements, section 14, page 270, states, in the absence of a statutory definition of good faith the authorities are not in harmony: "The good faith which will entitle [him] to compensation for improvements has been defined to mean simply a reasonable and honest belief of the occupant in his right or title * * *."

The author of the annotation in 104 A. L. R. 577 states at page 584:

"Upon any view, there is no right to recover for improvements mistakenly made on the land of another, where the improver's belief in his ownership of the premises was so utterly without foundation as to be little more than an idle guess, assumption, or hope."

A definition approved by the majority in the case at bar is; "The term is used in its popular sense, as the actual, existing state of mind, whether so from ignorance, sophistry or delusion, without regard to what it should be from given legal standards." Although several decisions subscribe to that rule it is contrary to the great weight of authority and to the rule heretofore existing in this jurisdiction.

The majority states: "Payment of taxes is evidence of good faith. * * * So is the mere fact plaintiff improved the land at his own expense." It is questionable whether the decision cited by the majority supports either statement. In any event, neither is sound as a general statement. Payment of taxes is an element in proof of color of title and would not be substantial evidence of good faith. Nor may one show improvements were made in good faith by showing merely he made such improvements.

This case falls within the class referred to in the annotation in 148 A. L. R. 335: "Expectation by one who improved real property of acquiring title or interest in property from a third person who in fact had neither title nor enforceable interest as supporting claim for compensation against the true owner." Some of these cases involve improvements made to the family home by one spouse on the theory it belonged to the other and are factually similar to the case at bar.

Whitehead v. Barker, 288 Mich. 19, 23, 284 N.W. 629, 630, was an action to establish a lien for improvements upon the fam-

ily home made by a husband under the mistaken belief it belonged to his deceased wife, who had previously conveyed it to defendant. Holding the husband was not entitled to compensation and pointing out that if he had an expectancy of title it would not have been sufficient to give him a right of compensation unless defendant was estopped to deny it, the court stated: "Improvements by the husband upon the lands of the wife will in general be presumed to be intended by him for her benefit, and he is consequently not entitled to compensation for the same. * * *."

Kelly v. Kelly, 293 Ky. 42, 48, 168 S.W.2d 339, 341, 342, 148 A. L. R. 331, 334, which was submitted on demurrer to plaintiff's pleadings, held a wife's expectation of inheriting or taking a widow's interest in her husband's property did not entitle her to recover from his grantee for improvements on property which she believed her husband owned but which he had conveyed before or after the improvements were made. The court stated:

"Such expectancy is, however, generally held insufficient to constitute or support a claim made in good faith under color of title, such as would entitle her to recover the expenditures made in improving the property.
"* * *.

"We are thus of the opinion that the allegations of the petition and petition as amended were insufficient to show that plaintiff was herself a claimant of the property under color of title or in good faith, where she did not claim under any instrument or deed, as vesting her with color of title."

Bryan v. Councilman, 106 Md. 380, 67 A. 279, 282, 14 Ann. Cas. 1175, holds, to entitle one to recover even in equity for improvements made upon another's property, he must have acted in good faith, that is, in honest belief, founded upon reasonable grounds, that he had secured good title to the property and was the owner; and hence, where a wife improved land in which her husband had inherited an interest, to serve herself, supposing it would be a home for herself and children, knowing the land did not belong to her, or having no reasonable grounds for believing it did, she could not recover the money expended.

Rainsbarger v. Rainsbarger, 208 Iowa 764, 224 N.W. 45, cited in the majority opinion is not in point. In that case the legal

title to the real estate upon which the wife placed the improvements was in her husband and she believed he owned it and did not know plaintiff (her husband's brother) had paid for the property. She pleaded and proved an estoppel based upon plaintiff's knowledge of and consent to the improvements.

The majority opinion places considerable emphasis upon the rule that occupying-claimant statutes will be construed liberally. I agree with that rule. Were the rule otherwise it is questionable whether this action, as brought, could have been maintained.

The majority opinion also quotes with approval part of a statement from Lindt v. Uihlein, 116 Iowa 48, 56, 89 N.W. 214, 217, that "The many cases * * * where courts have exercised great liberality, if not ingenuity, in extending the presumption of good faith for the relief of persons claiming compensation for improvements on land, will be found to have been cases of hardship * * *." Of course, that does not mean the law will favor the claimant because he happens to be aged or because his wife was a blind pensioner, as pointed out by the majority. Nor does the statement include cases of the type of this case. If it did, the majority opinion would doubtless have cited decisions in which a court, exercising liberality or ingenuity would have allowed a spouse to recover as an occupying claimant in a situation comparable to that at bar. The authorities to the contrary cited above appear to be directly in point.

WENNERSTRUM, C.J., and SMITH and MULRONEY, JJ., join in this dissent.