HAMILTON ET AL., APPELLANTS, *v.* ROCK, RESPONDENT.

No. 8769.

Submitted January 30, 1948.   Decided March 25, 1948.

191 Pac. (2d) 663.

Mr. P. F. Leonard and Mr. Daniel G. Kelly, both of Miles City, for appellants. Mr. Leonard argued the cause orally.

Messrs. Farr & Colgrove, of Miles City, for respondent. Mr. Farr argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiffs brought this action in conversion to recover the sum of $450, the alleged value of certain hay alleged to have been taken by defendant. The answer admits taking the hay and alleges ownership thereof in defendant and seeks damages against plaintiffs for hauling away seven tons worth $7.50 per ton and for damages in the sum of $50 caused to the remainder by weather after plaintiff's wrongful removal of the top of one of the stacks and for an additional $50 damages done by plaintiff's cattle to the hay.

The cause was tried to the court sitting with a jury. Verdict was in favor of defendant in the sum of $152.50 and interest. Plaintiffs' motion for new trial was denied and they appealed from the judgment.

The main issue in the case is whether plaintiffs or defendant owned the hay in question.

It is conceded that plaintiffs cut and stacked the hay and put a fence around the stacks. It was prairie hay which, before severance, constituted a part of the real estate. Kiehl v. Holliday, 77 Mont. 451, 251 Pac. 527. Plaintiffs testified (and this was not controverted) that they had leased the NW¼ of section 26, T. 10, R 54, from Anna M. Clellan, the owner, since 1936, paying $10 a year for the use of the land. They introduced in evidence a check dated October 28, 1941, payable to Mrs. Anna M. Clellan in the sum of $10 on which was written "Rent on NW¼ Sec. 26-10-54 from April 1st, 1941, to April 1st 1942." The check contained the endorsement of Anna M. Clellan. The hay was cut and stacked in July, 1942. According to plaintiffs' evidence some of it was cut from the above described land and

some from adjoining land owned by plaintiffs. It was stacked on the above described land.

The evidence was sufficient to establish a lease within the ▮ rule stated in Stoltze Land Co. v. Westberg, 63 Mont. 38, 206 Pac. 407, 408, wherein it was said: "No particular words, technical or otherwise, or form of expression in an instrument are necessary to constitute it a lease. Any language by which the possession and enjoyment of land is granted for a specified time at a stipulated rental creates a tenancy, and is in effect a lease." Plaintiffs testified that they were in the habit of paying the rental in the fall of the year.

They contend that they held over and retained possession after April 1, 1942, without demand of possession or notice to quit and that in consequence they are presumed in law to have held by permission of the landlord for another full year pursuant to subdivision 2 of section 9889, Revised Codes of Montana 1935.

Defendant contends that the following facts show that the lease, if any there was, was terminated by a letter written by Anna M. Clellan to plaintiffs on May 18, 1942, reading: "W. G. Hamilton, Ismay, Montana. Dear Sir: Just a few lines to let you know that all deals you and I may have had in regard to the sale of my land at Lacomb, Montana, are cancelled. I have paid the back taxes and as I told you in my last letter, if I did, all deals was off. In the future if you wish to rent or buy the place, you have to see Connie Clellan at Mildred as he will act as my agent. Yours truly, Mrs. Anna M. Clellan, Oak Park, Illinois."

Plaintiffs admitted receiving this letter but take the position that it did not constitute a demand for possession or notice to quit.

The evidence shows that Connie Clellan pursuant to authority from Mrs. Anna M. Clellan sold the land to defendant Rock on May 20, 1942, receiving a payment of $50 down and the balance was agreed to be paid and was actually paid in December 1942.

Neither Connie Clellan, Mrs. Clellan, nor defendant made

demand for possession of the property nor gave notice to quit unless the letter above referred to was sufficient for that purpose.

Connie Clellan saw plaintiffs when they were putting up the hay on the afternoon of July 6, 1942. He testified that W. G. Hamilton, one of the plaintiffs, said to him: "Say, I got a letter from your sister-in-law saying if we wanted to either rent or buy that land why we'd have to see you." The witness said he replied: "You are too late. I have already sold that land." Upon being asked whom he sold it to he said "Art Rock."

Plaintiffs had started cutting the hay the day before this conversation is claimed to have taken place. Connie Clellan also testified that he told Mr. Hamilton that "I don't think I'd cut any hay on her land," and that Mr. Hamilton replied, "Well, we'll go ahead and cut the hay and we'll deal with Art afterwards." Mr. Hamilton denied that any such conversation took place.

Plaintiffs offered the following instruction No. 4 which was refused: "The jury is instructed in all cases of tenancy upon agricultural land where the tenant has held over and retained possession for more than 60 days after the expiration of his term without any demand of possession or notice to quit by his landlord or the successor in interest of his landlord, if any there be, he shall be deemed to be holding by permission of the landlord, or the successor in interest of his landlord, and shall be entitled to hold under the terms of the lease for another full year and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold for another year."

Defendant objected to the giving of the instruction for reasons which may be summarized as follows:

(1)  That it is not applicable to the facts of the case.

(2)  That there was no proof that there was any hiring of real property.

(3)  That the lands are not agricultural lands within the

meaning of section 9889 upon which the instruction was based.

Error is assigned for refusal to give the offered instruction. This assignment of error is meritorious and necessitates a reversal of the case.

We have already pointed out that the evidence was sufficient ▆▆ to show a hiring of real property and hence to meet the second ground of objection. That the lands are agricultural land is equally clear. The term "agricultural lands" as used in section 9889 was to distinguish it from mining or urban property. We have held that lands used for grazing purposes are used for one agricultural purpose. De Fontenay v. Childs, 93 Mont. 480, 19 Pac. (2d) 650. The term "agriculture" should receive a liberal construction and as used in the homestead laws embraces "forests, grazing land, and, in fact, all types of land which, in good faith, were sought for a home, provided the lands could, by the settler's effort, be made habitable and used as a farm home." United States v. Northern Pac. Ry. Co., 311 U. S. 317, 361, 61 S. Ct. 264, 284, 85 L. Ed. 210.

The letter of Mrs. Clellan to plaintiffs cannot be construed ▆▆ as a demand for possession or as notice to quit as matters of law. It simply notified plaintiffs that Mr. Clellan was made the agent of Mrs. Clellan and that dealings for the rental or sale would thereafter have to be made through Mr. Clellan. Mr. Clellan took no steps to demand possession or to notify plaintiffs to quit the premises. It was for the jury to say whether plaintiffs held over and retained possession of the land within the meaning of section 9889. In determining that question they would have a right to consider the character of the possession during the life of the lease which had continued since 1936, keeping in mind that possession of grazing land is necessarily not so open and obvious as possession of tillable land which is actually being worked or cultivated. Likewise it was for the jury to say whether defendant who lived in close proximity to the lands in question knew or was put on notice by plaintiffs' possession that they claimed some interest in or right of continued possession in the land at the time he became its owner.

The 60 days mentioned in section 9889 had not expired when he says he bought the land and it is a question for the jury to say whether he should have made a demand for possession or notice to quit under all the circumstances of the case if he desired to terminate plaintiffs' right of possession. This the jury should determine under appropriate instructions. Offered instruction No. 4 should have been given to the jury.

The court gave to the jury its instruction No. 5 Reading:

■ "You are instructed that if you find from the evidence in this case that the plaintiffs were notified by the then owner of the land upon which the hay in question was cut or her agent, in May of 1942, that their tenancy of said land was terminated, then the plaintiffs did not have the right to the use, occupancy or possession of said lands or to cut, stack or remove any of the hay therefrom."

The giving of instruction No. 5 did not cure the error in refusing to give plaintiffs' offered 'instruction No. 4 because the jury should have been instructed as to what consequences would follow if they construed the letter of May 1942 as insufficient to terminate the tenancy.

Plaintiffs also offered instruction No. 2 reading: "The jury ■ is instructed that if a lessee of real property remains in possession thereof after the expiration of the hiring or leasing period and the lessor accepts rent from him the parties are presumed to have renewed the hiring on the same terms and for the same time not exceeding one month where the rent is payable monthly nor in any case exceeding one year."

The only evidence of the acceptance of rent by the lessor, Mrs. Clellan, after April 1, 1942, was a check dated October 19, 1943, which was long after plaintiffs were advised that the land had been sold to defendant Rock and which was sent to her only three days before this action was commenced. The court properly refused that offered instruction.

Plaintiffs contend that their motion made at the close of the ■ evidence should have been granted. That motion was to the effect that the court should instruct the jury that the

only issues for them to determine were the amount of hay and its value. They contend for the rule applied in Power Mercantile Co. v. Moore Mercantile Co., 55 Mont. 401, 177 Pac. 406, and Kester v. Amon, 81 Mont. 1, 261 Pac. 288, 291, stated in the latter case as follows: "* * * that when an occupant of lands plants, cultivates and harvests crops during the term of his occupation, they are his personal property, whether he occupied the land as a purchaser, a tenant, or a mere trespasser holding the land adversely to the real owner, and whether he came into possession of the land lawfully or not, provided he remain in possession until after the crops are harvested." But that rule does not apply to native grass such as we have here. In 25 C. J. S., Crops, sec. 8, after stating the above rule as applied to planted and cultivated crops, it is said: "If, however, the growth severed is such as comes by the act of God, as trees and grass, rather than such as owes its existence solely to the industry of the trespasser, the trespasser acquires no title to it by severance." Also in 15 Am. Jur., page 223, it is said: "In the case of fructus naturales, as distinguished from fructus industriales, the rule is apparently that crops, although severed by a trespasser while in possession, are the property of the owner of the land." Both authors cite the case of Lindsay v. Winona & St. P. R. Co., 29 Minn. 411, 13 N. W. 191, 43 Am. Rep. 228, in support of the statement.

In the Lindsay case the court said: "Part of the property destroyed was hay and part of it wheat and oats; the former cut by plaintiff without any right, but merely by trespass, on land belonging to defendant; the latter sowed and harvested by him by trespass, and without any right, on land belonging to the State. The defendant insists that plaintiff is not the owner of either, so as to be entitled to recover. As to the hay, it is clear he was not the owner and could not recover; for all the cases hold that product of the soil which comes by nature or the act of God,—as trees and grass,—when severed by a wrong-doer, still belongs to the owner of the soil. The only difference in the cases is on the question whether, when suing

the wrong-doer for converting the thing severed, the owner may recover the value at the time of the conversion, including the value which may have been added by act of the trespasser. This court has held that he may. Nesbitt v. St. Paul Lumber Co., 21 Minn. 491.''

The Lindsay case it will be noted had to do with hay cut and stacked by a trespasser—a wrongdoer. Here even though plaintiffs should be found not to be holding over and in possession with the owner's permission within the meaning of section 9889, still there is evidence from which the jury may find that they honestly and in good faith thought they had the right as hold-over tenants to the use of the land at the time the hay was cut.

Under such circumstances the doctrine of accession applies. As stated in 15 Am. Jur., page 223: ''The doctrine of accession has been applied to trespassers who in good faith, or wilfully, sever crops belonging to another. Accordingly, one who in good faith makes grass into hay with the knowledge of and without objection by the owner under a belief that he has a right to do so, by which its value is greatly increased, acquires a title to the hay which will sustain his action of replevin therefor, but is liable for its value at the time of the conversion.''

This rule was applied under facts practically the same as those here in the case of Lewis v. Courtright, 77 Iowa 190, 41 N. W. 615, 616. In that case defendant entered upon land belonging to plaintiff and cut prairie grass from 18 acres and stacked it. Plaintiff claimed the hay as having been cut by willful and malicious trespass. The jury returned a verdict for defendant which was affirmed. The court in treating of the question said: ''It is shown that plaintiff did not by himself or agent authorize the cutting of the grass and the making of the hay, but defendant alleges, and offered evidence which tended to show, that he purchased the right to make the hay of one who claimed to have authority to sell it, and that he entered upon the land, and made and removed the hay, in good faith, with the belief that he had the right so to do. It may be conceded, for the purposes of this opinion, that defendant had

no valid authority to cut the grass and make the hay in question, but there was evidence which justified the jury in finding that he believed he had such authority when he cut the grass. While he was at work on the land he was notified that he had not acquired a right to the grass. He at once desisted from cutting more, but finished making and stacking that already cut. The question we are called upon to determine is whether, under the facts of the case, the title to the hay vested in defendant. It is shown that the value of the grass before it was cut was small; some of the evidence tending to show that it was but eight to ten cents an acre. Each acre yielded from a ton to a ton and a half of hay, which was worth in stack from two to three dollars per ton. Under these facts, we think it would be manifestly unjust to hold that the ownership by the plaintiff of the grass gave him title to the hay. It is true that the hay in stack is the grass which belonged to plaintiff, cut and cured, and preserved for use; but the labor of defendant, rendered in good faith, under a claim of right, gave to the hay substantially all its value. The grass was worth to plaintiff the price for which it would sell. Time and the forces of nature would not add materially to that value, but, on the contrary, would in a short time have destroyed it, had the grass remained untouched. Therefore the plaintiff should not be permitted to enjoy the fruits of defendant's labor without paying therefor. Wetherbee v. Green, 22 Mich. 311 [7 Am. Rep. 653]; Murphy v. [S. C. & P.] Railway Co., 55 Iowa [473], 474, 8 N. W. 320 [39 Am. Rep. 175], Lampton's Ex'rs v. Preston's Ex'rs [1 J. J. Marsh, Ky., 454], 19 Am. Dec. 104. The plaintiff seeks to recover, not the value of the grass taken by defendant, but the hay which he has made, and, under the facts disclosed by the record, must fail.''

In Carpenter v. Lingenfelter, 42 Neb. 728, 60 N. W. 1022, 32 L. R. A. 422, the same rule was applied where the subject of the action was grass which had been cut and stacked as here.

It was applied to a house which had been rebuilt in the case of Walch v. Beck, 230 Iowa 146, 296 N. W. 780.

In consequence upon another trial the jury should be instructed along the line of these cases. In other words even though there was not an automatic renewal of the lease under section 9889, still there was sufficient evidence to present a question for the jury to determine whether plaintiffs in good faith thought they had the right to cut the grass and stack the hay. If the jury should find that they did so in good faith then they are entitled to recover the value of the hay less the value of the standing grass before it was cut.

The judgment is reversed and the cause remanded for new trial in accordance with the views herein stated.

Mr. Chief Justice Adair and Associate Justices Choate and Metcalf concur.

MR. JUSTICE GIBSON:

I dissent. Assuming that appellants had a lease of the land upon which the hay was cut and harvested, it expired on April 1, 1942. The hay was not cut until July 1942, while respondent, who had bought the land in the May previous, was in the hospital at Glendive. Appellant W. G. Hamilton testified to the effect that the cancelled check for $10 payable to Anna M. Clellan dated October 27, 1941, upon which was written, ''Rent on N. W.¼ Sec. 26-10-54 from April 1st, 1941, to April 1st 1942,'' constituted a lease to the appellants, makers of the check, from Anna M. Clellan, payee of the check and owner of the premises at the date thereof. But appellant says the lease was renewed by virtue of the provisions of subdivision 2 of section 9889, Revised Codes of Montana 1935, and their alleged holding over after the expiration of the lease and the alleged failure of the owner of the premises to demand possession or give appellants notice to quit within 60 days after the expiration of the term of the lease. The pertinent provision of the statute upon which appellant relies reads as follows: ''In all cases of tenancy upon agricultural lands, where the tenant has held over and retained possession for more than sixty days after the expiration of his term without any demand of possession or notice to quit by the landlord, or the successor in estate of his land-

lord, if any there be, he shall be deemed to be holding by permission of the landlord, or the successor in estate of his landlord, and shall be entitled to hold under the terms of the lease for another full year * * *.''

This statute was adopted by Montana from the California Code of Civil Procedure, by the enactment of the Montana Codes in 1895.

The California Code section in the identical language was section 1161, California Code of Civil Procedure. It has been construed and applied by the Supreme Court of that state in several cases. That court holds that this statute ''creates a presumption of law merely, and it is always permissible for either of the parties to a lease to show circumstances tending to rebut the legal implication arising thereunder from continuous occupation of the premises after the expiration of the original term.'' Ambrose v. Hyde, 145 Cal. 555, 79 Pac. 64; Cowell v. Snyder, 171 Cal. 291, 152 Pac. 920; Swithenbank v. Wood, 99 Cal. App. 341, 278 Pac. 496, 279 Pac. 462.

Here, Mrs. Clellan, the landlord, wrote to appellants under date of May 20, 1942, which is less than sixty days from the expiration of the ''lease,'' and told them, as set forth in the letter in the court's opinion here that, ''In the future if you wish to rent or buy the place you have to see Connie Clellan at Mildred as he will act as my agent.'' Appellants admit they received this letter (it was registered) but put forth the technical objection that it did not constitute a demand for possession or notice to quit.

It appears to be a sufficient notice to any person of ordinary understanding that the lease was not renewed; that if the appellants wished to rent the place it would be necessary for them to see the landlord's agent, Connie Clellan. It follows as of course that if the lease was not renewed the landlord was entitled to possession of the premises. In truth she was then in possession, as legal possession is defined. The land was unfenced grazing land but was within a large tract of several sections of land of appellants. Appellants' cattle grazed on

their lands and perhaps in so doing nibbled herbage from the land of Mrs. Clellan. This not quite constitutes possession by appellants of land which by reason of the ownership of Mrs. Clellan, was in contemplation of law in her possession. Constructive possession truly, but sufficient nevertheless, against the delayed asserted claim of appellants, which to come within the statute must be actual and real.

But as stated, the statute only creates a presumption. Had appellants not been notified, clearly and explicitly by the letter of May 20, 1942, that the lease (if the loose arrangement of paying $10 when convenient to appellants as a year's rent for the 160 acres of land may be called a lease), would not be renewed for another year, and had the 60 days following the end of appellants' term expired without word or act from the landlord indicating otherwise, the presumption of renewal would come into being. By reason of the notice to the tenants within the 60-day period after the "lease" expired, the presumption did not arise, and the appellants were trespassers. I see no evidence of good faith on the part of appellants in entering upon the land and cutting the grass after they had received in May the notice that "all deals was off."

The verdict of the jury and judgment thereon entered appear to me to be in accordance with the facts and the law. I see no error at the trial and think the judgment of the district court should be affirmed.