DENNIS KENFIELD, Plaintiff and Respondent, *v.* FRANCES CURRY and PHILIP CURRY, Defendants and Appellants.

No. 10802

Submitted February 8, 1965. Decided March 12, 1965.

399 P.2d 999.

Gordon E. Hoven (argued), Havre, for appellants.

J. Chan Ettien (argued), Havre, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by landlords from a judgment founded upon the unlawful ejectment of the respondent from the appellants' farm lands in Hill County. The case was tried by a jury before the Honorable C. B. Elwell of the twelfth judicial district of the State of Montana, in and for the County of Hill.

The case arises out of an oral farm lease made for the 1961-62 crop year. One of the appellants, Frances Freeman Curry, is the aunt of Dennis Kenfield, respondent. The lease in question covered some 1,600 acres, and the agreement was that the respondent would pay for said lease with one-third of the crop. Respondent started farming the lease in 1959 and took the crops of 1959, 1960, 1961 paying one-third of each of these crops to appellant. It was the respondent's practice each year to summer fallow and in the summer of 1961 he summer-fallowed some 800 acres. That fall he planted his wheat allotment of 520 acres.

During the winter of 1961-62, the appellant, Philip Curry, husband of Frances Freeman Curry, talked with the respondent about giving up the lease for the 1962 farm year but his offer was unsatisfactory. No written notice to get off the land was ever given the respondent. Late in April 1962, the respondent went upon the land to begin his spring work and he then learned that Philip Curry had been on the land and had done some reseeding of the winter wheat crop. The respondent proceeded to put in some 80 to 100 acres of barley and while doing so the appellant, Philip Curry, ordered the respondent off the land.

During the trial Fay Rathbone, Manager of the Federal Land Bank Association of Havre, testified concerning the lease as follows:

"Q. In the fall of 1961 around the first part of September,

did you have negotiations with Frances Curry on a loan on farm land through the Federal Land Bank? A. I did.

"Q. Were the lands involved in that loan Section 13 and Township 34 North, Range 8; West Half of Section 17; and South Half of Section 18 in Township 34, Range 9 in Hill County? A. West Half of 17 and all of 13; Lots 1, 2, 3, and 4 in East Half and West Half and East Half of 18.

"Q. Which would be the West Half of 18? A. 34 and 9.

"Q. And that amounted to approximately two sections of land or fraction of sections— A. 1,584 and fraction acres.

"Q. In the course of Mrs. Curry's negotiations with you concerning this loan, did she advise you that she had a tenant on the land? A. She did.

"Q. And who did she name as her tenant? A. Dennis Kenfield.

"Q. And she advised you as to the term of lease which Dennis Kenfield had on that land? A. Advised me, what was that?

"Q. Did she tell you how long a term or what kind of a lease he had? A. He had a verbal lease which she said would expire on March 1, 1963.

"Q. Did you advise— A . Wait a minute.

"Q. Pardon? A. One-third of the crop delivered.

"Q. Yes. Did you advise her at that time, Mr. Rathbone, Mr. Dennis Kenfield would have to sign a or what is called a Statement Re Tenancy? A. Yes.

"Q. And she—Did she authorize you to procure one for Mr. Kenfield? A. Yes. She signed a statement here which indicates that statement.

"Q. Do you have the original of the Farm Tenancy Statement? A. I do.

"Q. Produce it please. (At this point an instrument was marked as an exhibit.)

"STATEMENT RE TENANCY

"No.    108973

"Name Frances M. Curry

"To The Federal Land Bank of Spokane

"Spokane, Washington

"I am tenant on the property described in the above numbered application for a loan from The Federal Land Bank of Spokane under a lease which expires March 1, 1963. I have no interest in said lands or any part thereof under any contract or option to purchase, or otherwise, and my only interest in said land is that of a tenant under said lease.

"Dated this 11th day of September, 1961.

"/s/ Dennis Kenfield

"Witness:

"/s/ Fay Rathbone."

Mrs. Curry testified that in 1955 she purchased the farm land in question from her father, the contract providing that she would pay off the contract each year with one-third of the crop. From 1955 to 1959 she leased to an uncle who farmed it. In 1957 her father died, and the contract became an asset of the estate which was administered by her brother. The estate was closed in 1961, and it is the appellant's contention that during the time of the administration of the estate she had no control over the land in question. Mrs. Curry testified that the income from the lease was paid into the estate during the years of administration.

During the course of the trial the respondent testified with particularity concerning his yield on the farm in question, his estimates of the crop in the fall of 1962, that the estimated gross profit for 1962 would have been $17,780 and taking out the various expenses and appellant Frances Curry's one-third, that he should have netted "a little over $7,000 off that crop in 1962". The jury verdict was for $6,235.00.

The appellant sets forth two specifications of error.

1. That the court erred in giving its instruction No. 2.

2. That the court erred in submitting the question of damages to the jury.

Concerning the first specification of error, court's instruction No. 2, reads as follows:

"The jury is instructed in all cases of tenancy upon agricultural land where the tenant has held over and retained possession for more than 60 days after the expiration of his term without any demand of possession or notice to quit by his landlord or the successor in interest of his landlord, if any there be, he shall be deemed to be holding by permission of the landlord, or the successor in interest of his landlord, and shall be entitled to hold under the terms of the lease for another full year and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold for another year."

The appellants' position is that while this instruction is practically verbatim section 93-9703, subd. (2), R.C.M.1947, it does not apply, for they contend, in spite of the facts set forth, that there was no evidence of any hold-over by respondent in 1962. We find no merit in appellants' contention for clearly under the facts testified to by all witnesses and the law of this state, the respondent was not a sharecropper but a tenant with an interest in the land for a term. Gibbons v. Huntsinger, 105 Mont. 562, 74 P.2d 443; Hamilton v. Rock, 121 Mont. 245, 191 P.2d 663; Cruse v. Clawson, 137 Mont. 439, 352 P.2d 989; Johnson v. Anderson Ranch Co., 142 Mont. 251, 384 P.2d 271.

Concerning the second specification of error, the appellants contend the proof was speculative and that respondent failed to furnish sufficient data to determine the loss of profit. While admitting that certain offered proof on damages was in the record, the appellants contend that because the respondent did not put in proof of (1) cost of picking up the shelled barley, and (2) the approximate cost of reseeding the winter

wheat, that the proof was inadequate under the doctrine set forth by this court in Smith v. Fergus County, 98 Mont. 377, 386, 39 P.2d 193. Using the authority relied upon by appellants, the respondent quotes from the very same case language that clearly shows respondent complied sufficiently with the case as to damages. Smith v. Fergus County, supra, states:

"Prospective profits from farming operations may be ascertained with a reasonable degree of certainty, and, when the evidence furnishes sufficient data to determine the value of the prospective crops, they constitute a proper element of damages for breach of contract of lease, and evidence of the actual matured value of other crops of a like kind, cultivated during the same period, in the same vicinity, and under substantially similar conditions, is admissible to prove such profits." See also Bennett v. Dodgson, 129 Mont. 228, 284 P.2d 990, 32 Am. Jur., Landlord and Tenant, § 164, p. 159.

Considering the fact that after the respondent had testified rather completely on farm costs and estimated yields of the land in 1962, and that appellants who ultimately farmed and harvested the crop failed to testify as to costs and submit accurate figures on the yields in winter wheat and barley, though they had ample opportunity to do so, then under such conditions the appellants are in no position to challenge the verdict of the jury in the amount of $6,235.00

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and CASTLES concur.