NO.   95-272

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STANLEY RASMUSSEN, Personal Representative
of the Estate of FRED PELZMAN, Deceased,

            Plaintiff and Respondent,

      v.

JOE R. LEE,

            Defendant and Appellant.

FILED

APR 09 1996

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Ninth Judicial District,
               In and for the County of Teton,
               The Honorable Marc G. Buyske, Judge presiding.


COUNSEL OF RECORD:

         For Appellant:

             Gorham E. Swanberg and Matthew Hutchison,
             James, Gray & McCafferty, Great Falls, Montana

         For Respondent:

             John P. Wuerthner, Wuerthner & Wuerthner,
             Great Falls, Montana

             Kenneth R. Olson, Attorney at Law,
             Great Falls, Montana


                          Submitted on Briefs:  February 15, 1996

                                    Decided:  April 9, 1996

Filed:

_____
            Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from a decision of the Ninth Judicial District Court, Teton County, granting summary judgment on the claim of unlawful detainer in favor of Stanley Rasmussen, personal representative of the estate of Fred Pelzman (the estate). We affirm.

Joe Lee has requested that we strike certain evidence referenced in the estate's brief. The evidence referred to was not considered by this Court in our decision. Lee's request is therefore moot and we choose not to rule on his motion to strike.

We restate the issues as follows:

1. Did the District Court err in granting summary judgment in favor of the estate on the estate's claim of unlawful detainer?

2. Did the District Court err in requiring Lee to post a $60,000 supersedeas bond?

FACTS

Fred Pelzman owned an 800 acre ranch in Teton County, north of Choteau. Lee and his wife moved to Choteau in 1977. Lee struck up an acquaintance with Pelzman and subsequently entered into a series of transactions with him. They apparently entered into a work/share agreement in 1977, but no copy of that agreement was produced.

On July 25, 1978, Lee prepared a lease between his wife and Pelzman covering a two-year period which began in November 1977 and ended in November 1980. The lease covered the ranch, fifty-five cows, and two bulls for an annual rental of $3,000. Lee also

drafted a "Right of First Refusal," dated February 15, 1978, purporting to grant to Lee the right to purchase the Pelzman ranch for fair market value. Five weeks later, Lee drafted another document which was also entitled a "Right of First Refusal" granting to him the right to purchase the ranch for $120,000.

After the lease between Lee's wife and Pelzman expired, Lee drafted another lease. The second lease was between himself and Pelzman and covered the ranch, fifty cows, and two bulls for $3,000 per year. The lease commenced January 1, 1981, and expired by its own terms on December 31, 1985.

Pelzman died in May 1986. Following his death, his estate wrote two letters to Lee giving Lee notice that his lease would be terminated on December 31, 1986, which included a one-year extension by implication. The estate demanded possession of the ranch and cattle on or before January 1, 1987. Lee refused to relinquish the property.

In September 1986, Lee filed an action for specific performance to exercise his option in purchasing Pelzman's ranch and cattle for fair market value. The district court determined that Lee had no option, but rather a right of first refusal which had not come into effect because there was no notice of any intent by Pelzman or his estate to sell. The district court's decision was affirmed by this Court in Lee v. Shaw (1991), 251 Mont. 118, 822 P.2d 1061.

In March 1987, the estate filed an action asking that Lee's lease be terminated. The complaint was amended in April 1989 to

3

allege an action for unlawful detainer. The issue of Lee's right to possession of the ranch was bifurcated from the damage issue pursuant to Lee's motion.

In the meantime, the estate executed a purchase and sell agreement dated July 10, 1992, with another party. Lee brought an action against Pelzman's estate for specific performance to enforce the agreement giving Lee the right of first refusal to buy the ranch for a specified price. The district court concluded, and we agreed, that Lee waived his right of first refusal and therefore the ranch was available for other offers. Estate of Pelzman (1993), 261 Mont. 461, 863 P.2d 1019.

As for the present bifurcated action, the District Court found there was no genuine issue of material fact and concluded that summary judgment was appropriate for the unlawful detainer action. The court found that Lee was notified by the estate in June 1986 that his lease would terminate on January 1, 1987. The court concluded that the continued holding by Lee of the property from that date triggered the unlawful detainer statute. Accordingly, the District Court granted summary judgment in favor of Pelzman's estate on April 21, 1995, and ordered Lee to vacate the premises. From that decision, Lee appeals.

Lee requested a stay of the District Court's order pending appeal. The District Court granted Lee's request and set a supersedeas bond in the amount of $60,000 to cover damages incurred by the estate due to Lee's continuous possession of the ranch

4

during the course of this appeal. Lee also appeals from the court's setting of the supersedeas bond.

ISSUE 1

Did the District Court err in granting summary judgment in favor of the estate on the estate's claim of unlawful detainer?

We review a district court's grant of summary judgment using the same evaluation as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

> The movant must demonstrate that no genuine issue of material fact exists. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 900 P.2d at 903 (citations omitted)

In its order granting summary judgment and requiring restitution of premises, the District Court found that "Lee has presented no sworn evidence that demonstrates any genuine issue of material fact as to his claimed right to continued possession of the property in question, as is his burden in a summary judgment proceeding, once the proponent of summary judgment has demonstrated the lack of such issues of fact."

On appeal, Lee claims a question of fact exists as to whether the estate consented to his remaining on the property. Such consent would be fatal to a claim of unlawful detainer. In reviewing Lee's brief in opposition to the summary judgment motion

5

and the transcript of the District Court hearing, we have determined that Lee did not present to the District Court the argument that the estate consented to Lee's possession of the property. We will not address an issue presented for the first time on appeal. Fandrich v. Capital Ford Lincoln Mercury (1995), 272 Mont. 425, 431, 901 P.2d 112, 115-16. Therefore, the issue of the estate's consent is not before us.

Lee also claims a question of fact exists as to whether the agreement between him and Pelzman dated March 20, 1978, provided for Lee's possession of the property until time of sale. Lee contends the estate could not unilaterally terminate the lease where its term was set forth in the March 20 agreement, and therefore, the estate's June 1986 termination notice was ineffectual.

The March 20, 1978, agreement provides in pertinent part:

I, Fred Pelzman, Sr., agree to give Joe R. and Floie N. Lee first option to purchase property I own in the above Legal Description upon or before my passing for the sum of one hundred and twenty thousand dollars. It is agreed by the undersigned that the option holders will reside and maintain the said property until time of sale. A ledger of time and improvements will be kept for the purpose of reimbursement by the landowner. Upon notification of intent to sell, a period of 45 days will be allowed for payment.

In Lee, we determined that the March 20 agreement granted a right of first refusal to the sale of the Pelzman property which is effective upon notice of intent to sell. Lee, 822 P.2d at 1064. The estate received an offer to purchase by another party and entertainment of that offer ripened Lee's right of first refusal.

6

Pelzman, 863 P.2d at 1021. We concluded, however, that Lee waived his right of first refusal and the estate could accept the other offer. Pelzman, 863 P.2d at 1022.

The only obstruction to the sale was Lee's refusal to deliver possession of the property to the estate. "We have long held that one cannot benefit from his own wrong." Payne v. Stratman (1988), 229 Mont. 377, 382, 747 P.2d 210, 213 (citing Roundup Cattle Feeders v. Horpstad (1979), 184 Mont. 480, 485, 603 P.2d 1044, 1047, and § 1-3-208, MCA). Accordingly, Lee cannot claim his possession of the property was lawful based upon the March 20 agreement. We conclude that the District Court did not err in finding there was no question of fact as to whether the March 20 agreement gave Lee possession of the property, and therefore, the estate's notice of June 1986 effectively terminated the lease agreement.

The District Court found that the unlawful detainer statute, § 70-27-108(1), MCA, applied in this case due to Lee's continued possession of the property after his rights were terminated. The District Court then concluded the estate was entitled to restitution of the premises pursuant to § 70-27-205(1), MCA. Lee asserts that if he was found to have possessed the property without permission, § 70-27-108(2), MCA, and its special notice provision for agricultural property would apply instead. Section 70-27-108, MCA, provides as follows:

> A tenant of real property or mining claim, for a term less than life, is guilty of unlawful detainer:

7

(1) when he continues in possession, in person or by subtenant, of the property or any part thereof after the expiration of the term for which it is let to him without the permission of the landlord or the successor in estate of his landlord, if any there be, but in case of a tenancy at will, it must first be terminated by notice, as prescribed in 70-27-104;

(2) where he continues in possession, in person or by subtenant, without permission of his landlord or the successor in estate of his landlord, if any there be, <u>after default in the payment of rent</u>, pursuant to the lease or agreement under which the property is held, and 3 days' notice in writing requiring its payment, stating the amount which is due, or possession of the property shall have been served upon him . . <u>In all cases of tenancy upon agricultural lands where the tenant has held over and retained possession for more than 60 days after the expiration of his term without any demand of possession or notice to quit by the landlord or the successor in estate of his landlord, if any there be, he shall be deemed to be holding by permission of the landlord or the successor in estate of his landlord and shall be entitled to hold under the terms of the lease for another full year and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold for another year</u>;

(3) when he continues in possession, in person or by subtenant, after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held . . . .

(Emphasis added).

Lee argues that since he held over and retained possession of agricultural lands for more than sixty days after the expiration of the lease **term** without a demand or notice to quit by the estate, he is entitled to hold over under the terms of the prior lease for another year. The estate contends that subsection (2) applies only to tenants who have defaulted in the payment of rent. In opposition, Lee relies on our decisions in Holliday Land & Livestock Co. v. Pierce (1977), 174 Mont. 393, 571 P.2d 93, and

8

Hamilton v. Rock (1948), 121 Mont. 245, 191 P.2d 663, where we applied § 70-27-108(2), MCA, to cases involving agricultural tenants where default in rent was not at issue. Those cases are distinguishable on their facts and are also based upon an erroneous interpretation of law.

In Hamilton, the tenant had a one-year lease. At the expiration of that lease, the landlord informed the tenant "all deals were off." However, the landlord also said "[i]n the future if you wish to rent or buy the place, you have to see . . my agent." Hamilton, 191 P.2d at 665. The tenant cut the hay crop after the expiration of the lease and the landlord claimed possession of the hay crop. Considering the landlord's reference to continued possession of the land, the jury found the tenant was provided no notice to quit, and therefore, had a right to continued possession of the land and its crop for one year pursuant to § 9889, RCM (now codified at § 70-27-108(2), MCA). In contrast, Lee was provided notice of the termination of his lease and the unequivocal expectation by the estate that they sought possession of the property.

In Holliday, an agricultural tenant obtained a one-year lease which was extended to two years. After the end of the second lease term, the tenant remained on the property but paid no advance rental. Six months later, after the tenant's crops had been planted, the landlord served the tenant notice to pay rent or abdicate possession of the property. The landlord subsequently filed a complaint for unlawful detainer. Holliday, 571 P.2d at 94.

In that case, this Court applied § 93-9703(2), RCM (the predecessor of § 70-27-108(2), MCA), and concluded that the tenant was presumed to have permission of the landlord for the full year and could not be found liable for unlawful detainer. Holliday, 571 P.2d at 95. The present case is distinguished from Holliday in that the estate did not request payment of rent in return for continuation of the lease but explicitly demanded possession of property as of January 1, 1987. Possession of property in this case is not due to default in rent, where in Holliday it was. In fact, Lee tendered the annual 1986 rent of $3000 to the estate in December 1986. Therefore, our decision in Holliday does not apply.

In Holliday, however, we referred to our decision in Pipkin v. Connolly (1975), 167 Mont. 284, 538 P.2d 347, where we applied § 93-9703 (2), RCM, to a holdover agricultural tenant who had not defaulted in rent. Pipkin, 538 P.2d at 348-49. The tenant was found liable for unlawful detainer by the district court and was ordered to deliver possession of the property with its crops to the landlord. Pipkin, 538 P.2d at 348. In that decision we stated:

> Under [§ 93-9703(2), RCM] a hold-over tenant for sixty days without notice who invests time and seed will not lose this investment to the landlord. However, the statute gives him no more than the right to harvest his crop to protect his investment and protects him from liability in an action for unlawful detainer.

Pipkin, 538 P.2d at 351 (citing Miller v. Meredith, Hill and Whitfield (1967), 149 Mont. 125, 129, 423 P.2d 595, 597). We concluded that:

> [The tenant] remained on the property sixty days after the lease terminated and planted their crops. Therefore,

10

under section 93-9703(2), they had a right to harvest those crops and are protected from liability for unlawful detainer.

Pipkin, 538 P.2d at 351.

While this Court in Hamilton and Pipkin used § 70-27-108(2), MCA, to attain equitable results, we consider the application of that subsection in cases other than for default of rent to be in error. Section 70-27-108, MCA, provides three situations where a tenant can be found liable for unlawful detainer. Subsection (1) provides for continued possession "after expiration of the term for which it is let to him without the permission of the landlord." Subsection (2) provides for continued possession "after default in the payment of rent." Subsection (3) provides for continued possession "after a neglect or failure to perform other conditions or covenants of the lease."

"[W]hen interpreting a statute all parts must be construed together without according undue importance to a single or isolated portion." Sutherland Stat. Const. § 46.05. The provision Lee relies upon--the exception for agricultural property--is part of subsection (2). It is not referenced in any other part of that statute. Accordingly, the agricultural exception is applicable only to subsection (2) which is in the context of default of rent, and we overrule our holdings in Hamilton, 191 P.2d at 666, and

11

<u>Pipkin</u>, 538 P.2d at 351, to the extent they are inconsistent with this interpretation of § 70-27-108(2), MCA.[1].

Section 70-27-108(2), MCA, does not apply to the present case since the unlawful detainer action was not for default of rent. Notice subsequent to termination of the lease was not required. Lee was in possession of the property after expiration of the **term** for which it was let to him without the estate's permission. Lee is therefore liable for unlawful detainer pursuant to § 70-27-108(1), MCA.

We conclude the District Court did not err in its interpretation of law, and we affirm the District Court's grant of **summary** judgment in favor of the estate.

### ISSUE 2

Did the District Court err in requiring Lee to post a $60,000 supersedeas bond?

The District Court granted to Lee a stay of execution pending appeal as to the unlawful detainer judgment and the **matter** of possession of the property involved. In connection with the stay, the District Court required Lee to post a supersedeas bond in the amount of $60,000.

The District Court based the bond amount on the estate's loss of **interest** on the sale price agreed to by the third party. The

---

[1]    By our interpretation of § 70-27-108(2), MCA, we also overrule the holdings in Miller v. Meredith, Hill and Whitfield (1967), 149 Mont. 125, 423 P.2d 595, Kenfield v. Curry (1965), 145 Mont. 174, 399 P.2d 999, and Enott v. Hinkle (1962), 140 Mont. 206, 369 P.2d 413, to the extent they are inconsistent with our opinion.

12

court figured a reasonable rate of return of eight percent over a four-year period. The court also took into consideration costs the estate would incur on appeal and the damage the estate would suffer from the delay caused by appeal as it must maintain the property without reimbursement from any source when, without this proceeding, the property would be in the possession of the third party buyer who would bear such costs.

Lee contends the court erred in calculating the bond amount. According to the court's calculations, eight percent interest on the agreed upon sale price of $165,000 for four years is $52,000. Lee maintains that this amount should be deducted from the supersedeas bond because it was improper for the court to presume the sale to the third party would come to fruition. Lee stresses that a buy/sell agreement is merely an agreement to agree and therefore speculative.

We review a district court's order setting the amount of a supersedeas bond to determine whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason. Safeco Ins. Co. v. Lovely Agency (1985), 215 Mont. 420, 426, 697 P.2d 1354, 1358.

Previously, Lee asked this Court to exercise supervisory control and reduce the amount of supersedeas bond Lee was required to post. In our order of September 18, 1995, we determined there was no compelling reason why we should reduce the amount of Lee's supersedeas bond. "The purpose of a supersedeas bond as a condition for staying enforcement and execution on a judgment is to

13

secure the rights of the judgment creditor during the appeal process." Safeco, 697 P.2d at 1358 (citing Poulsen v. Treasure State Industries, Inc. (1979), 183 Mont. 439, 442, 600 P.2d 206, 208).

The only event preventing the closing of the sale to the third party was Lee's possession of the property. The District Court calculated the amount of interest the estate lost from its inability to reinvest any sale proceeds, the cost of taxes, and appeal expenses. We conclude now as we did then--there was a reasonable basis for the amount of the bond that the court established. Therefore, the District Court did not err in requiring Lee to post a $60,000 supersedeas bond.

We affirm.

_____
                    Justice

We concur:

_____
  Chief Justice

_____

_____

_____
  Justices

14

April 9, 1996

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Gorham E. Swanberg
Matthew Hutchison
James, Gray & McCafferty, P.C.
Box 2885
Great Falls MT 59403-2885


      Wuerthner & Wuerthner
John P. Wuerthner
Attorneys at Law
Box 2503
Great Falls MT 59403-2503


Kenneth R. Olson
Attorney at Law
600 Central Plaza, Suite 316
Great Falls MT 59401


Stoney Burke
Attorney at Law
Box 70
Choteau MT 59422-0070


Joe Sullivan
Attorney at Law
410 Central Ave., Strain Bldg.
Great Falls MT 59401


ED SMITH
CLERK OF THE SUPREME COURT
STATE! OF MONTANA

BY: *T. Gallagher*
Deputy